### FALL RIVER COUNTY v. POWELL *et al.*

1. It is not indispensable that a settlement or locality to be selected as "the place of the county seat" shall have definite and exact topographical boundaries.

2. A particular settlement known as "Hot Springs" may be selected as "the place of the county seat," although it may be at the time unplatted, and have no fixed and definite exterior boundaries.

3. Where a part of the locality or territory occupied by a settlement theretofore known as "Hot Springs" is, prior to the election of a county seat, platted and named thereon "Hot Springs," and such election results in the selection by the electors of Hot Springs as the county seat,

it is a question of fact, depending upon the understanding and intention of the voters, whether the place theretofore generally known as "Hot Springs" or the territory platted as "Hot Springs" is selected as the county seat.

4. In such case, where the finding of the trial court is well supported by the evidence, such finding will be accepted as correct by this court.

(Syllabus by the Court.    Opinion filed March 3, 1894.)

Appeal from circuit court, Fall River county. Hon. WILLIAM GARDNER, Judge.

Appeal to the circuit court by the states attorney of Fall River county, from the action of the board of county commissioners of said county in accepting a court house constructed under a contract with said board, and drawing a county warrant in partial payment therefor. The action of the board was sustained, and from the judgment so ordering this appeal is taken. Affirmed.

The facts are stated in the opinion.

*S. E. Wilson, States Attorney, Wood & Buell, W. G. Rice* and *J. H. Boomer*, for appellant.

A county seat as contemplated by our statute must be a place with fixed and definite boundaries. Secs. 604, 606, Comp. Laws; Sec. 6, Chap. 21, of the Political Code 1877.

A town may be founded and established, and exist as a "place" within the meaning of Sec. 6, of Chap. 21 of the Political Code of 1877, and the streets and alleys dedicated to the use of the public, without the recording of any plat. Secs. 1095 to 1105, Comp. Laws; Bryant v. Estabrook, 21 N. W. 245; Manley v. Gibson, 13 Ill. 308; Wetting v. Bowman, 39 Ill. 416; Could v. Howe, 23 N. E. 602; Strong v. Darling, 9 Ohio. 201; Baker v. St. Paul, 8 Minn. 491; Same case, 8 Minn. 436, West Pub. Co. Ed.; Pangborn v. Westlake, 36 Ia. 546.

When a county seat is once located, it cannot be changed or enlarged except in the manner limited by statute. State v. Harwy, 14 Pac. 158; State *In re* Kellar Attorney General v. Board of County Commissioners of Atchinson County, 24 Pac. 87; State *In re* Norman, Relator, v. Smith *et al.*, 46 Mo. 60.

*Martin & Mason, Granville G. Bennett* and *G. M. Cleveland,* for respondents.

A plat or incorporation is not essential to the point or place voted for or selected for a county seat. Reasonable certainty as to the situs is all that is required, although the boundaries may not be defined or marked with topographical accuracy. Railroad Co. v. Banker, 44 Ill. 26; Railroad Co. v. Williams, 27 Ill. 48; State v. Stevens 19 Pac. 368; State v. Cavers, 22 Ia. 343.

Appellants rest their entire case on the alleged existence of a so-called townsite plat. Long prior to the date of said pretended plat there was a place, a situs, a village with reasonably defined boundaries in existence, and understood and known among the people of the county generally. The fact that an owner of a portion of the territory so understood to be embraced in such village or place known and designated by the name of Hot Springs had platted his ground and applied that name to his plat, would not limit and define the place, without any action on the part of the remainder of the citizens, or a knowledge on the part of the people of the county generally. Meixell v. Williamson, 25 Ill. 529.

KELLAM, J. This was an appeal to the circuit court by the state's attorney of Fall River county, under Section 610, Comp. Laws, from the action of the board of commissioners of said county in accepting a court house, constructed under a contract with said board, and in ordering and drawing a county warrant in partial payment therefor. Upon a trial before the circuit court the action of the board was sustained, and, from the judgment so ordering, this appeal is taken. It is conceded on all sides that the case presents but one question: Was such court house located at the county seat of Fall River county? There seems to be no dispute about the immediate facts. Fall River county was organized in November, 1883, and the county commissioners named "Hot Springs" as the temporary county

seat; and at the next general election, to wit, in November, 1884, the qualified electors of the county selected "the place of the county seat" by ballot. Hot Springs was again selected, and the simple question is, where is and what constitutes the place Hot Springs, thus selected? While there is some evidence to the contrary, we think it was sufficiently shown and practically established that for some time, two or three years at least, prior to the organization of the county, there was a settlement in the immediate vicinity of certain springs, several in number, known as the "Hot Springs," and that the place or locality of this settlement was commonly called and known as "Hot Springs." Persons living in that settlement or locality were reported to live at Hot Springs, and persons going there from other parts were said to be going to Hot Springs. While as a place, it had no set or defined topographical boundaries, its general locality was well understood in all parts of the county. While these conditions existed, and in January, prior to the organization of the county, Edmund and Jennie Petty, owners of land comprising a part of the locality and territory theretofore known as Hot Springs, platted 160 acres thereof, and caused the same to be recorded as a plat of the town of Hot Springs. A question was raised by respondent as to the validity of this plat, on account of defective acknowledgment, but we do not regard this as very material. It was not necessary that the "place" selected as the county seat should have been platted at all. The selection, if in other respects legal, would have been good and operative if it had designated a certain quarter section of land, or "John Smith's farm," if there had been but one such in the county, and that a well known place. It is purely a question of what place the electors had in mind and intended to designate and select. If neither Petty nor any other owner had ever platted his land, the county seat would by such vote have been located at Hot Springs, provided there was such a place, whose situs or location could have been practically and reasonably fixed and determined. It was not essential that

Hot Springs or Cascade, as candidates for county seat, should have fixed and definite exterior boundaries. The fact that, at the time of the election, a town of Hot Springs had been platted, whether such plat was regular or irregular, was only important as bearing upon the intention and understanding of the electors in designating Hot Springs as the place of their choice for county seat. Suppose it had been demonstrated on the trial that every elector who voted for Hot Springs did so having in mind and intending the locality formerly and then known as Hot Springs, and not the particular territory platted by Petty; would the law, on account of such plat, force the county seat into and within the limits of such plat? We think not. Under the evidence in this case, we think Hot Springs, either as a well known locality in the vicinity of the springs, or as a platted townsite, was a place eligible for selection as a county seat; and which place is selected is a question, not of law, but of fact, depending upon the intention of the electors. As a question of fact, the trial court has passed upon it. Its judgment seems to us supported by the preponderance of the evidence. Entertaining this opinion, as we do, after having carefully gone over the whole record, it would serve no useful purpose to marshal and compare the statements of different witnesses, which lead us to the same conclusion as found by the trial court, to-wit, that the Hot Springs selected as the county seat was not necessarily and only the territory covered by the Petty plat, and that the court house in question, standing a thousand feet outside of said plat, but within the territory and locality then and previously known as "Hot Springs," was and is located at the county seat. The judgment of the circuit court is affirmed. All the judges concur.