THOMAS A. WAY *et al.,* Appellants, v. E. P. FOX *et al.,* and THOMAS A. WAY *et al.,* Appellants, v. E. P. FOX *et al.*

**County Seats:** RELOCATION: *Annexation of town.*  The annexation to the town of G. of the village of C., where the county seat is located, does not locate the county seat, and so permit the county buildings to be put within the old limits of G , under the Code provision authorizing the change of site of the court house, provided the place selected is within the limits of the town at which the county seat is located.

**Certiorari:** CHANGING SITE OF COURT HOUSE: Certiorari is the proper remedy to test the legality of proceedings of the county board for changing site of a court house.

INJUNCTION: *Removal of books and records.*  Injunction will lie to restrain the unauthorized removal of county books and records.

EXPENDITURE FOR BUILDING COURT HOUSE.  The limitation of Code section 423 on the amount that may be expended by the county board in erecting a court house, has no application to money donated by citizens.

*Appeal from Hancock District Court.*—HON. J. F. CLYDE, Judge.

FRIDAY, OCTOBER 17, 1899.

THESE two cases involve the same question.   The first is a certiorari proceeding to test the legality of the proceed-

ings of the defendants sitting as a board of supervisors in changing the site of the county buildings of Hancock county. The second is an injunction suit to restrain the defendants from removing the county seat and records of said county from what was theretofore known as the village of Concord to the town of Garner. The trial court quashed the writ issued in the first case, and sustained a demurrer to the petition in the second, and plaintiffs appeal. Annulled in first case.—*Annulled* and *reversed* in second.

*Cliggitt & Rule* and *Bradford & Aldridge* for appellants.

*Carr & Parker, J. E. Wichman,* and *A. C. Ripley* for appellees.

DEEMER, J.—About thirty years ago the county seat or seat of justice of Hancock county was located on a block of ground known as the "Court-House Square" block, situated on the southeast one-fourth of the southwest one-fourth of section 31; township 96, range 23 W., of the fifth P. M.; the said forty acres being known as the "Town Plat of Concord." A small unincorporated village grew up on this town plat, and ever since the location of the county seat a court house and other county buildings have been maintained upon the court-house square or block. During the whole of the said thirty years the courts have been held at this court house, and all the official business of the county has been transacted at the seat of justice so established. In February, 1898, the citizens of the incorporated town of Britt, also located in said county, attempted to procure a relocation of the county seat at their town. While these citizens were circulating their petition, the inhabitants of the town of Garner, which is also a municipality duly incorporated and located in Hancock county, but a short distance from the village of Concord, began proceedings to annex that village to their town. An election was held, and the

said territory, with all that intervened, was duly annexed
to the town of Garner. Between the original limits
of the town of Garner and the plat of the village
of Concord is a large amount of land, used wholly for agri-
cultural purposes, which has not been platted, and which
the petitions allege was in no way needed for municipal pur-
poses, nor for the prospective future growth and develop-
ment of the town of Garner. It is further alleged
that these annexation proceedings were for the sole
purpose of relocating the county seat at Garner.
After the annexation proceedings were concluded, certain
citizens of the town of Garner filed with the board of super-
visors of the county a proposition offering the county the
sum of thirty thousand dollars, to be expended in purchas-
ing a site and erecting a court house in the incorporated
town of Garner, as it existed before the annexation pro-
ceedings were had. Shortly thereafter the petition for
removal to the town of Britt was presented to the board of
supervisors, and found insufficient. After this finding was
made, the board of supervisors accepted the proposition
made by the citizens of Garner, and decided to erect a court
house with money procured for that purpose, and to
locate the same upon what is known as "Block 12," in Tal-
man's addition to the town of Garner. This block 12 is
not within the limits of the village or town plat of Con-
cord, but it is about one mile north of the same, and within
the territory of the incorporated town of Garner, as it existed
prior to the annexation proceedings. The county auditor
was authorized to expend four thousand dollars for the site,
and a committee was appointed to procure plans and speci-
fications for the new court house. A post office has been
maintained by the government at the village of Concord
during nearly all of the thirty years heretofore mentioned.
It is alleged in the injunction proceedings that, unless
restrained, the defendants will remove the county seat and
all the records of the county to the site so purchased; that

they will build a court house at the new site, and thus effectually relocate the county seat.

These facts are not in dispute, and the questions presented for our solution are: Have the defendants, as the board of supervisors of Hancock county, exceeded their jurisdiction, or otherwise acted illegally, and shall they be enjoined from relocating the county seat at a point within the town limits of Garner, as they existed before the annexation proceedings were begun?

Some of the questions suggested by these records are so well settled as to be beyond the range of controversy. *First,* there is no doubt that the town of Garner had the right, by proper proceedings, to annex adjacent and outlying territory, and in so doing to include the village of Concord within its limits; *second,* the board of supervisors had no right to relocate the county seat without following the express provisions of the statute as found in Code, sections 394-409, inclusive; *third,* the board had no right to purchase real estate for county purposes when the expense exceeded two thousand dollars, nor to order the erection of a court house when the probable cost would exceed five thousand dollars, without submitting the proposition to the legal voters of the county. Code, section 423. Subject to these limitations, it had the right to purchase the necessary real estate for the use of the county, and to remove the site of, or to designate a new site for, any county buildings required to be at the county seat, provided the site shall not be beyond the limits of the town, village, or city at which the county seat is located. Code, section 422, subd. 9.

I. With these questions settled, we come now to the controlling one in the case, and that is, did the board of supervisors, in making the orders hertofore recited, and purchasing the new site for the court house in the town of Garner, relocate the county seat? Appellees contend that this was the effect of the proceedings. On the other hand, it is insisted that the board did nothing

more than remove the site of, or designate a new site for, the court house, and that the site selected by them was within the limits of what we may call the "Greater Town of Garner," at which the county seat is located. In solving the questions thus presented, we must first determine what was the county seat of Hancock county at the time the proceedings were had of which complaint is made. The "county seat" is the place properly designated for the doing of the business of the county; the place at which public buildings are to be erected, where the courts are held, and the county offices are located. The term does not necessarily mean the county buildings or the land whereon they are situated. In common parlance, it means the town or municipality where the buildings are located and the business transacted. *Whallon v. Gridley,* 51 Mich. 503 (16 N. W. Rep. 876). It is not necessarily co-extensive with the town where located. *State v. Atchinson Co. Com'rs,* 44 Kan. 186 (24 Pac. Rep. 87); *State v. Smith,* 46 Mo. 60; *State v. Harwi,* 36 Kan. 588 (14 Pac. Rep. 158). In the absence of statute, it seems to be well settled that, when a city or town is selected as the county seat, the boundaries of such city or town, as they then exist, become the boundaries of the county seat, and the subsequent inclusion of more territory does not remove the county seat. See authorties last above cited. One of the statutes to which we have referred seems to authorize a change of site for the court house, provided the place selected is within the limits of the town at which the county seat is located. Now, the county seat of Hancock county was located at Concord, and a pertinent inquiry is, when, if ever, was it changed to Garner? Appellees say that was done when Garner extended her limits. But is that proposition sound? True it is that Garner has extended her limits, and has taken in the village of Concord, but did that act alone change the location of the county seat? Had Concord incorporated and extended her limits so as to take in what is now the town of Garner, there would be little doubt of the legality

of the proceedings. But that was not done. Here Garner extended her limits so as to take in the county seat, and by that act alone she claims to be the county seat. It does not seem to us that the propositions advanced by appellees' coun· sel are sound. If they are, then all that is needed to effectuate a relocation of the county seat is for the town that seeks to secure the relocation to extend its boundaries in such a manner as to absorb the seat of justice, and the act is accomplished. In this manner, county seats could be removed without the vote of the people affected thereby, and the provisions of the law relating to the relocation of county seats would be wholly ineffectual. There is no doubt that the county seat was located at the village of Concord, and it is doubtless true that that village, as a village, has been absorbed. But the mere absorption of the territory did not remove the seat of the county government. That was just as definitely fixed after the extension of the city limits of Garner as it was before. The platted portion of the village of Concord is just as easily identified now as it was before the change, and that part of it which constituted the county seat is just as much the county seat now as it was before the inhabitants concluded to become, for municipal purposes, a part of the town of Garner. A "village" is defined to be a town site platted and unincorporated. The question as to when the county seat was located at the town of Garner has not been satisfactorily answered by appellees' counsel. Of course, we will grant that, if Garner ever became the county seat, the board of supervisors had the right to select a new site for the court house, provided they located it within the limits of the town. But we ask again: When did the legislature or the people of the county determine that Garner was the county seat? When did the people of the county, who alone could determine upon a relocation, say that it should be changed from what is known as the "village of Concord" to the incorporated town of Garner? As the electors of the county are the only persons who can relocate the county seat, surely the

inhabitants of a town adjoining the seat of justice cannot, by proceedings to annex territory contiguous to the town in which they live, relocate the county seat. For county seat purposes, the territorial limits of the village of Concord are as well defined and as distinct now as they ever were, and the electors of the county have never indicated, in any proper manner, that they desired a change.

II. The limitations of section 423 of the Code, with reference to the amount that may be expended by the board in erecting a court house, or in purchasing a site therefore, have no application to the case before us; for it appears clearly that the money which the defendants proposed to expend was donated by the citizens of Garner.

III. Appellees further contend that neither certiorari nor injunction is the proper remedy to correct the evils complained of. We think that certiorari is the proper remedy by which to test the legality of the proceedings of the board of supervisors, and that injunction will lie to restrain the removal of the books and records.

In the first case the action of the board of supervisors in ordering a relocation and change of the county seat is annulled. And in the second case the ruling on the demurrer will be reversed, and the case remanded for proceedings in harmony with this opinion.—ANNULLED AND REVERSED.