Argued July 25, decided August 6, 1912.

## MURDOCH v. KLAMATH COUNTY COURT.

[126 Pac. 6.]

COUNTIES—COURTHOUSE—CHANGE OF LOCATION.

1. Section 2877, *et seq.,* L. O. L., prescribing the manner of removal of a county seat, and providing for an election therefor, has no application to the change of location of a courthouse to another place within the limits of the county seat; a matter for the county ocmmissioners, in the absence of limitation on their power.

COUNTIES—COUNTY SEAT—LOCATION OF COURTHOUSE—"AT."

2. "At the town of L.," in said county, where an act located the county seat, is equivalent to near or in proximity to that place; so that location of the courthouse 1,000 feet outside the limits of the original town plat is authorized.

From Klamath: JOHN S. COKE, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by H. F. Murdoch to enjoin the officers of Klamath County from erecting a courthouse outside of the county seat, Klamath Falls, Oregon. From a decree in favor of defendants, plaintiff appeals.

In the year 1882 (Sp. Laws 1882, p. 107), Klamath County was created and the county seat temporarily located by an act of the legislative assembly, which provided as follows:

"The county seat of Klamath County is hereby located at the town of Linkville, in said county, until otherwise located, as provided in this act."

The town of Linkville was then inhabited by about 500 people. On January 27, 1879, a plat of the town of Linkville was filed and recorded, consisting of 40 blocks, representing an area of approximately 60x190 rods. At the next general election, in 1884, by a majority vote of the electors, the county seat of Klamath County was permanently located at the same place. The town of Linkville was incorporated by the legislative act of 1889. See Laws of 1889, p. 550. The boundaries were particularly described; but, by an error in the description, about one-fourth of a mile on the east was omitted. In 1893, by an act to incorporate the town of Klamath Falls, and to repeal the act incorporating the town of Linkville, the name of the county seat was changed and the boundary limits perfected. Laws 1893, p. 212. After the location of the county seat, up to the year 1889, first one building and then another was used for courthouse purposes; the various buildings being situated in different parts of the town. Ever since the act of 1893, Klamath Falls has been the name of the county seat of Klamath County. The city limits now extend far beyond the first corporate boundaries. The last United States census shows a population of 2,758. The present courthouse

being dilapidated and unsuitable for the required purposes, the county officers have obtained title to, and, it is alleged, will, unless restrained, erect a courthouse upon block 10, a five-acre tract in Hot Springs addition to Klamath Falls, at a distance of about 1,000 feet outside of the limits of the original town plat of Linkville and about 150 rods from the present location of the courthouse. The proposed site is within the corporate limits of Klamath Falls.                           AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. J. C. Rutenic.*

For respondents there was a brief over the names of *Mr. F. H. Mills, Mr. Thomas Drake* and *Messrs Stone & Barrett,* with oral arguments by *Mr. Drake* and *Mr. C. F. Stone.*

MR. JUSTICE BEAN delivered the opinion of the court.

Plaintiff shows by his complaint that he will be especially injured by the change in the location of the courthouse. The whole case is submitted upon the merits. As we understand, the right to bring the suit and to have the question determined is conceded by both sides. It is maintained upon the part of plaintiff that the county officers have no authority to construct a courthouse outside of the limits of the town of Linkville as shown by the plat filed in 1879. On behalf of defendants it is contended that, at the time of the location of the county seat at Linkville, there were no legally defined limits of that town, nor were there any limits prescribed by law until the act of the legislature of 1889; that within the meaning of the phrase, "at the town of Linkville, in said county," the proposed site is included in the area of the county seat as first located. At that time the settlement extended to block 10, and a few people were living in the immediate vicinity of this block. Later

developments show that the topography of the land did not tend to confine the town to a restricted district.

1. Plaintiff contends that, in order to authorize the county officers to change the location of the courthouse, they should proceed in accordance with Sections 2877 *et seq.,* L. O. L., being the act of 1903 (page 165), which prescribes that whenever the inhabitants of any county of this State desire to remove the county seat of the county from the place where it is fixed by law, or otherwise, an election for that purpose shall be called by the county court and held by the electors of the county. This act directs the manner of the removal of a county seat. It does not pertain to the change of the location of a courthouse within the limits of an established seat of justice. If the contemplated establishment of the county building would be a removal of the county seat, it is unauthorized, and such act is illegal. On the other hand, if the proposed courthouse site is within the limits of the county seat of Klamath County, such construction would be a proper exercise of official authority in the absence of limitation upon such power: 11 Cyc. 380; *Simpson* v. *Bailey,* 3 Or. 515.

In the Umatilla County case (*Simpson* v. *Bailey*), at page 518 of the opinion, Mr. Justice PRIM uses this language:

"Suppose the legislature should pass an act, locating the county seat of Marion County, at the city of Salem. Salem is quite a large place, and its corporate limits are quite extensive. The city is laid off into blocks and lots, and these are owned by different persons. Would it be necessary, in order to make the act valid, for the legislature, after locating the county seat at Salem, to go on in detail, and provide that the county buildings should be erected upon a certain block, in a certain part of the city? We think not. In such case, the county commissioners would be authorized to select the best site they could, anywhere within the city limits."

2. The question presented for our determination is this: Did the act of 1882 authorize the location of the courthouse upon block 10, Hot Springs Addition to Klamath Falls, or should the same be located within the limits of the town of Linkville as shown by the plat referred to? The boundaries within which such structure may be erected must be determined according to the import of the act of 1882, temporarily locating the county seat of Klamath County "at Linkville," and authorizing the permanent location thereof by the legal voters of the county.

The Century Dictionary and Cyclopedia defines the word "at" as follows:

"A preposition of extremely various use, primarily meaning to, without implication, in itself, of motion. It expresses position attained by motion to, and hence contact, contiguity, or coincidence, actual or approximate, in space or time. Being less restricted as to relative position than other prepositions, it may in different constructions assume their office, and so become equivalent, according to the context, to *in, on, near, by, about, under, over, through, from, to, toward*, etc. Of simple local position: (a) With verbs of rest (be, live, etc.) : In, on, near, by, etc., according to the context: denoting usually a place conceived of as a mere point: * * So with names of towns, etc.: as, *at* Stratford, *at* Lexington, etc.; but if the city is of great size, *in* is commonly used: as, *in* London, *in* Paris, *in* New York; unless, again, the city is conceived of as a mere geographical point: as, our financial interests center *at* New York."   See, also, 1 Words & Phrases, 595.

Upon this question we notice the following authorities: The signification of the word "at' depends largely upon the subject-matter in relation to which it is used, and the circumstances under which it becomes necessary to apply it to surrounding objects. When used in reference to place, "at" frequently means "in" or "within," but sometimes denotes nearness or proximity, which is its

primary signification, and it is less definite than "in" or "on." Its signification is generally controlled by the context and attending circumstances, and, when used in a contract requiring a railroad company to construct its road so as to intersect another line "at" a certain city, means an intersection near the city, and not necessarily within the corporate limits. *Williams* v. *Ft. Worth & N. O. Ry. Co.*, 82 Tex. 553 (18 S. W. 206). A contract by a railroad company to establish its depot "at" a specified town is complied with by locating it at a convenient distance from the business portion of the town. *Frey* v. *Ft. Worth & R. G. Ry. Co.*, 6 Tex. Civ. App. 29 (24 S. W. 950-951) ; 1 Words & Phrases, 598.

In the case of *Rogers* v. *Galloway Female College,* 64 Ark. 627 (44 S. W. 454: 39 L. R. A. 636), a subscription for the establishment of a college stipulated that it should be located at a certain incorporated town. At the time the subscription was made and accepted, no question was raised as to whether the college would be located within or without the corporate limits of such town. The location beyond the corporate limits, but not beyond the aggregation of dwelling houses composing the town as distinguished from the adjacent country, was held to be a sufficient compliance with the conditions of the subscription.

We do not think that the corporate limits of the town of Linkville as described in the act incorporating the town in 1889 (Laws 1889, p. 550), or the boundaries, as given in the act of 1893 (Laws 1893, p. 212), changing the name of the town from Linkville to Klamath Falls, would necessarily be controlling, although these legislative acts have a bearing upon the question, no doubt. See *Way* v. *Fox,* 109 Iowa, 340 (80 N. W. 405). It is a proper exercise of statutory authority for the legislature to submit the question of the permanent

location of the county seat of Klamath County to the
voters. Article 1, Section 21, Constitution of Oregon;
*Simpson* v. *Bailey,* 3 Or. 515; *McWhirter* v. *Brainard,* 5
Or. 426.

An examination of the case of *Simpson* v. *Bailey,* 3 Or.
515, together with other cases, will disclose the fact
that it is not the custom of either the legislature or the
people, in locating a county seat, to confine the limits
thereof to a particular block or small tract. In author-
izing a change in the location of the county seat of
Umatilla County, by an act of October 13, 1868 (Laws
1868, p. 59), provision was made for an election to locate
the county seat, as follows:

"The present location, Umatilla Landing, shall be one
candidate and Upper Umatilla somewhere between the
mouths of Wild Horse and Birch creeks (a distance of
about five miles), the other candidate to be voted upon
at said election."

As indicative of the usual meaning of the language
employed, we notice that prior to 1908, when it was
amended, Article XIV, Section 3, of the Constitution of
this State provided "that all the public institutions of
the State, hereafter provided for by the legislative
assembly, shall be located at the seat of government."
The city of Salem is the seat of government of the State
of Oregon; yet the penitentiary, insane asylum, and other
State institutions were, under this organic law, erected
outside the corporate limits of the capital city. The
term "county seat" applies not merely to the lot or block
and the buildings used for transacting the public busi-
ness, but to the territory designated by law, and by the
expression of the people locating the county seat. The
boundary lines of the county seat located at the town of
Linkville, pursuant to the act of 1882, were not definitely
fixed. Giving to the phrase, "at the town of Linkville,
in said county," used in the statute, the meaning intended

by the lawmakers (Endlich's Interpretation of Statutes, § 8; Black, Interpretation of Laws, p. 36), and in compliance with the expression of the. legal voters of Klamath County, in establishing the seat of the county government (*Fall River County* v. *Powell*, 5 S. D. 49: 58 N. W. 7), we think that the proposed site of the courthouse is within the area designated by the act of 1882; that the county court of Klamath County, in the exercise of its functions, has the power to build a courthouse upon the contemplated site; that the same is not outside of the legal bounds of the county seat; in other words, that the phrase "at the town of Linkville" is equivalent to near or in proximity to that place. We realize that this is an important question, and it has received more consideration than this memorandum indicates. Every case must stand upon its own bottom, and we will not take the time to discuss all of the authorities cited. It follows from these considerations that the decree of the lower court should be affirmed, and it is so ordered.

AFFIRMED.