[Civ. No. 4070.   Fourth Dist.   Sept. 8, 1950.]

J. E. JORDAN et al., Appellants, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF TULARE et al., Respondents.

H. A. Savage for Appellants.

R. N. Nickerson and Leroy McCormick for Respondents.

MUSSELL, J.—Plaintiffs, as taxpayers of Tulare County, brought this action to enjoin the Board of Supervisors of Tulare County from erecting and constructing a new county courthouse on a tract of land outside of the present corporate limits of the city of Visalia and to restrain the county auditor and treasurer from expending any county funds in so doing. The action was tried before the court without a jury and plaintiffs appeal from the judgment rendered against them.

The county of Tulare was organized under the provisions of chapter 153 of the Statutes of 1852 and section 2 of that statute established the seat of justice of the county temporarily at Woodsville. In 1853 the Legislature enacted chapter 46 of the Statutes of 1853 which provided in part that at the next general election the permanent location of the seat of justice of Tulare County should be submitted to the voters. At the next general election, held on September 7, 1853, there were 44 votes cast for Visalia and 41 for Woodsville. At the time of this election, Visalia had no definite designated boundaries and the area embraced by it was unincorporated.

On December 9, 1853, the supervisors took possession of a quarter section of land at Visalia and appointed it the seat of justice of the county of Tulare. In August of 1857 the supervisors selected this quarter section as a site for the

county seat and caused the land to be laid out and divided into town lots. This is the quarter section upon which the present courthouse, erected in 1857, is now located.

On September 28, 1948, a contract was executed between the Hyde Development Company and the county of Tulare for the construction of a new county courthouse on a site approximately 1½ miles west of the present courthouse on property adjacent to the present city limits of the city of Visalia. This contract was cancelled by agreement of the parties on May 5, 1950, and the question of its legality has become moot. However, it is conceded that unless restrained, the county of Tulare will proceed to build a courthouse on the new site (which has been deeded to the county) without submitting the proposition to the electors at a general election as provided in article XI, section 2, of the state Constitution. This section provides that ''No county seat shall be removed unless two-thirds of the qualified electors of the county, voting on the proposition at a general election, shall vote in favor of such removal. . . .''

The question before us is whether the provisions of the state Constitution relative to the removal of a county seat are applicable in the instant case.

The plaintiffs first contend that the Legislature in 1907 designated the city of Visalia as the county seat of the county of Tulare by enacting section 3975b of the Political Code, and that in 1947, by enacting sections 23600 and 23654 of the Government Code, the Legislature again designated the city of Visalia as the county seat. However, section 3975b of the Political Code merely states that ''The county seats of the respective counties of the state, as now fixed by law, are hereby recognized as, and declared to be, the county seats of the respective counties.'' Section 23600 of the Government Code provides that ''The county seats of the respective counties of the State, as fixed by law and designated in this article, are declared to be the county seats of the respective counties.'' And section 23654 of the same code provides that ''The county seat of Tulare is Visalia.'' The word ''city'' is not used in any of the three quoted sections and there is nothing in the language used indicating that the county seat of Tulare is within the corporate limits of the city of Visalia.

When ''Visalia'' was selected by the voters of Tulare County as the county seat, its boundaries were unfixed and indefinite and it was not necessary to its selection that it should have been platted or have fixed and definite boundaries.

■ The selection was legal and operative when it designated a place which was well known and which was the only such place in the county. (20 C.J.S. 810, § 55.) ■ When the county seat was thus located, it could not be changed by the proceedings incorporating the territory or by subsequent municipal action changing the boundaries of the incorporated city.

As was said in *State ex rel. Kellogg* v. *Board of County Commrs. of Atchison County,* 44 Kan. 186 [24 P. 87, 88]:

"When a county-seat is located, its exact location is fixed, and it cannot be changed by the subsequent mutations of the municipal corporation within whose territory it may happen to be located. . . ."

"It is not necessary, however, in any case, that a county seat should be located within or upon territory occupied by an incorporated city, or within the territory of a city at all. . . ."

■ In the absence of limitations on such power, a board of county commissioners, or a county court, having exclusive power over the property of the county may remove and designate new sites for county buildings, within the limits prescribed for the county seat, that is, the boundaries of the town as they exist at the time of location and establishment of the county seat at that place. (15 C.J. 444, § 91.)

In *Matkin* v. *Marengo County,* 137 Ala. 155 [34 So. 171], it was held that the terms "courthouse site" and "county site," as used in the statute, should be construed to signify a seat of government of the county, and hence that such statute did not apply to or require an election for the removal of the courthouse of the county from one lot of ground to another within the boundaries designated as the county seat.

In *Board of Revenue of Covington County* v. *Merrill,* 193 Ala. 521 [68 So. 971, 977], it was held that the board of revenue could lawfully remove the courthouse from its site in the public square of Andalusia to another lot within the town, within the meaning of a constitutional provision providing that no courthouse or county site should be removed except by a majority vote of the qualified electors of the county and that the provision did not forbid the erection of a new courthouse on a different site or lot in the same county seat or town.

*Murdoch* v. *Klamath County Court,* 62 Ore. 483 [126 P. 6, 7], is an Oregon case in which the action was brought to restrain the erection of a courthouse upon a parcel of land

outside of Linkville, Oregon. Linkville was established as the county seat in 1884 and five years later was incorporated and its boundaries were particularly described. In 1893, by an act to incorporate the town of Klamath Falls and to repeal the act incorporating the town of Linkville, the name of the county seat was changed and the boundary lines perfected. Since the last mentioned date, Klamath Falls has been the name of the county seat of Klamath County and the city limits now extend far beyond the first corporate boundaries. The county proposed to erect a new courthouse upon a tract of land within an addition to Klamath Falls, outside of the limits of the original town plat of Linkville. The statutes of Oregon provided that whenever the inhabitants of any county of the state desired to remove the county seat of the county from the place where it was fixed by law, or otherwise, an election for that purpose should be called by the county court and held by the electors of the county. The court held that the new site was not outside of the legal bounds of the county seat; that the phrase ''at the town of Linkville'' was equivalent to near or in proximity to that place.

In the instant case the trial court found that the tract of land upon which the new courthouse is proposed to be erected was at Visalia and we cannot say, as a matter of law, that the court's finding in this respect is erroneous.

The word ''at'' was defined in *Clark County Fiscal Court* v. *Powell County Fiscal Court,* 223 Ky. 10 [2 S.W.2d 1039, 1041], as follows:

''The primary idea in the word 'at' is 'nearness' or 'proximity,' and it is commonly used as the equivalent of 'near' or 'about.' *Fayette County Board of Education* v. *Tompkins,* 212 Ky. 751, 280 S.W. 114.''

In that case a state statute required the establishment of a county high school at the county seat and the court held that when the location was in reasonable proximity to the corporate limits of the county seat, the intention and purpose of the Legislature was complied with and the requirement as to the location was fulfilled; that the word ''at,'' in referring to place, primarily means ''near to'' that place and not necessarily within.

Since Visalia at the time of its selection as a county seat was not incorporated and had no definite or specific boundaries, the action of the electorate in designating Visalia as the county seat fixed its location at the place known as ''Visalia.'' The new building site can reasonably be said to be ''at'' Visalia

and the proceedings by which the corporate limits of the city of Visalia were fixed and by which they may be changed from time to time do not change the location of the county seat.

The erection and construction of a new courthouse on the site selected is not, in our opinion, a removal of the county seat within the meaning of the language used in article XI, section 2 of the state Constitution.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 2, 1950.