[Civ. No. 36163. Second Dist., Div. One. Aug. 19, 1970.]

VENTURA REALTY COMPANY et al., Plaintiffs and Appellants, v. H. F. ROBINSON et al., Defendants and Respondents.

## COUNSEL

Harry T. Straitiff for Plaintiffs and Appellants.

Edwin M. Osborne, Acting County Counsel, for Defendants and Respondents.

## OPINION

LILLIE, J.—Plaintiffs as taxpayers of Ventura County sued to enjoin members of the board of supervisors and the county executive from constructing a new county civic center complex, including a courthouse, on a site within the present corporate limits of the Town of San Buenaventura but outside the original boundaries of the town as established in 1866. Defendants demurred on two grounds—"1. The complaint does not state facts sufficient to constitute a cause of action. 2. The court has no jurisdiction of the subject of the action for the reason that plaintiffs have failed to join an indispensable party."[1] The trial court took judicial notice of the fact that in 1968 the land on which the proposed site is located was annexed to the City of San Buenaventura, and sustained the demurrer on the ground "that the complaint fails to state a cause of action." Plaintiffs not having amended their pleading within 10 days, a judgment of dismissal was entered; they appeal from the judgment.

The Town of San Buenaventura was incorporated and established by the Legislature in 1866 (Cal. Stats. 1865-1866, ch. CCXVI, p. 216); it consisted of an area of one square mile. In 1872 the Legislature created the

[1]The order sustaining demurrer reads in pertinent part: "The matter is duly argued and submitted to the court for consideration and decision and the court after due consideration orders said demurrer sustained on grounds that the complaint fails to state a cause of action." The trial court made no ruling on the second ground of the demurrer although respondents seek to justify the court's order and judgment of dismissal on that ground also. We note the demurrer does not specify the name of the "indispensable party" (*Kreling v. Kreling,* 118 Cal. 413, 420 [50 P. 546]) although supporting points and authorities referred to "the county." Thus in the light of this, the order sustaining the demurrer and the absence of any mention therein of the second ground we cannot speculate whethei the trial court considered the second ground of the demurrer and if it did, whether it found it to be a valid one.

County of Ventura and provided "The seat of justice shall be at the Town of San Buenaventura unless otherwise provided by law" (Cal. Stats. 1871-1872, ch. CCCLI, § 3, p. 484); the designation is now contained in section 23656, Government Code. When the Constitution of 1879 was adopted the Town of San Buenaventura, the boundaries of which were described in the Act of 1866, was the county seat of Ventura; it contained and still contains article XI, section 2: "No county seat shall be removed unless two-thirds of the qualified electors of the county, voting on the proposition at a general election, shall vote in favor of such removal. . . ." From 1962 through 1964 the County of Ventura acquired four parcels of farm land (81.701 acres) at a place called Montalvo located on Victoria Avenue outside of the corporate limits of the Town of San Buenaventura and approximately five miles from the old courthouse; in 1968 the land was annexed to the city. The first paragraph of section 23600, Government Code, provides: "The county seats of the respective counties of the State, as fixed by law and designated in this article, are declared to be the county seats of the respective counties. In any case where a county seat is an incorporated city, it includes all territory heretofore or hereafter annexed thereto."[2] Section 24256, Government Code, reads: "Whenever the law specifies that an office or building shall be located at the county seat and an incorporated city has been designated as the county seat, the location of said office or building may be either within or in the immediate vicinity of the corporate limits of said city."

■ The question is whether the board of supervisors may construct a courthouse and other county offices on a site presently within the corporate limits of the City of San Buenaventura but outside the city limits as they existed on the date the seat of justice of Ventura County was established at the Town of San Buenaventura (1872) without first securing the consent of two-thirds of the county's voters in an election as provided in article XI, section 2, California Constitution. Appellants claim it may not because it would constitute a removal of the county seat from San Buenaventura to Montalvo without approval of the electorate in violation of article XI, section 2; respondents counter that they propose no removal of the county seat from San Buenaventura because no designation of any other place as the county seat in Ventura County is contemplated, and that the county seat having been enlarged by annexation to include within its corporate limits the proposed building site at Montalvo (§ 23600, Gov. Code), they propose only a relocation of the courthouse within the City of San Buenaventura.

To support their position that when a city or town is designated as the

---

[2]As originally enacted section 23600 consisted of the present first sentence; by amendment (1957) the second sentence was added.

county seat the boundaries thereof as they then exist become the fixed boundaries of the county seat, and the subsequent inclusion of more territory does not enlarge the county seat, appellants rely on *State* v. *Board of County Comrs.* (1890) 44 Kan. 186 [24 P. 87]; *Way* v. *Fox* (1899) 109 Iowa 340 [80 N.W. 405, 407]; *Matkin* v. *Marengo County* (1903) 137 Ala. 155 [34 So. 171, 172]; and *Board of Review of Covington County* v. *Merrill* (1915) 193 Ala. 521 [68 So. 971, 974], and dictum in *Jordan* v. *Board of Supervisors* (1950) 99 Cal.App.2d 356 [221 P.2d 977]. In *Jordan* the court, acknowledging the out-of-state authorities, said somewhat gratuitously, at page 359: "When the county seat was thus located, it could not be changed by the proceedings incorporating the territory or by subsequent municipal action changing the boundaries of the incorporated city." Actually, unlike the instant case, *Jordan* dealt with a town unincorporated and without specific boundaries at the time of its designation as the county seat. The Board of Supervisors of Tulare County proposed the construction of a new courthouse on land outside of the present corporate limits of Visalia. The permanent location of Visalia as the county seat was established by election in 1853; at that time it was unincorporated with no definite or designated boundaries. Thus the trial court made a finding that the land upon which the new courthouse is to be erected is "at" Visalia. Citing *Murdoch* v. *Klamath County Court* (1912) 62 Ore. 483 [126 P. 6], the court held: "Since Visalia at the time of its selection as a county seat was not incorporated and had no definite or specific boundaries, the action of the electorate in designating Visalia as the county seat fixed its location at the place known as 'Visalia.' The new building site can reasonably be said to be 'at' Visalia and the proceedings by which the corporate limits of the city of Visalia were fixed and by which they may be changed from time to time do not change the location of the county seat.

"The erection and construction of a new courthouse on the site selected is not, in our opinion, a removal of the county seat within the meaning of the language used in article XI, section 2, of the California Constitution." (Pp. 360-361.)

There is a dearth of authority on the subject in this state, and *Jordan* is not really in point for the city involved therein differs in its corporate status from San Buenaventura; and the out-of-state cases so heavily relied on by appellants are of early vintage and in neither those nor *Jordan* did a statute such as section 23600, Government Code, exist. We find the law at that time aptly stated in one of appellants' own cases, *Way* v. *Fox* (1899) 109 Iowa 340 [80 N.W. 405]: "In the *absence of statute,* it seems to be well settled that, when a city or town is selected as the county seat, the boundaries of such city or town, as they then exist, become the boundaries of the county seat, and the subsequent inclusion of more territory does not

remove the county seat. See authorities last above cited [*State* v. *Atchison County Comrs.*, 44 Kan. 186 (24 P. 87)]." (Italics added; 80 N.W. at p. 407.) Further, in most instances the requirement that offices be located at the county seats is contained in the Constitution of those states; this is not true of California.

In *Murdoch* v. *Klamath County Court* (1912) 62 Ore. 483 [126 P. 6], primarily relied on in *Jordan,* the county seat of Klamath County was established "at" Linkville which was incorporated five years later and its boundaries established. Subsequently the town of Klamath Falls was incorporated encompassing Linkville, and the incorporation of Linkville was repealed. Later Klamath Falls was enlarged by annexation. The county proposed to erect a new courthouse outside the original boundary of Linkville and outside of the original boundary of Klamath Falls but within the present corporate limits of Klamath Falls in the Hot Springs addition. The court held that the construction of the new courthouse did not constitute a removal of the county seat requiring an election. It relied upon the original designation of the county seat as being "at" Linkville and held that the term "at" meant "nearness" or "proximity" but did not limit the area of the county seat to the original corporate boundaries. Following *Murdoch* the California court in *Jordan* held that only proximity was required for location of the courthouse where the county seat was originally located at an unincorporated place. Thus dictum therein suggested a greater restriction where the place was incorporated when originally designated as the county seat.

In 1957 in a situation identical to the one before us, and prior to the enactment of the second sentence of the first paragraph of section 23600, Government Code, the Attorney General of California rendered an opinion that, without the necessity for election under article XI, section 2, the County of Santa Clara may construct certain public buildings on a site located within the present city limits of San Jose but outside the original boundaries as they existed on the date the county seat was established at San Jose (Ops. No. 57-12 [29 Ops.Cal.Atty.Gen. 42]). Discussing *Jordan* and the out-of-state authorities cited herein, the Attorney General pointed up the obvious effect of the dictum in *Jordan* which sanctioned a greater restriction on the location of county buildings where the place designated as the county seat at that time happened to be incorporated.[3] It was for that

---

[3]"It is hard for us to believe that when the Legislature passed these enactments [§§24261, 24250, 25081, Gov. Code, designating certain offices to be located "at" the county seat], and the preceding sections upon which they are based, it intended that all of the business of these offices be conducted within the original boundaries of some particular city in the event that such original boundaries had been fixed prior to 1878, but that the Legislature did permit business to be conducted outside the original boundaries where by happenstance those boundaries were not fixed at the time of

reason that later in 1957 section 23600, Government Code, was amended to include the second sentence, and section 24256 was enacted. ■ To avoid the effect of these two statutes appellants claim they are unconstitutional because they violate the constitutional prohibition against removal of county seats except by required action of the electorate (art. XI, § 2, Cal. Const.) and constitute special legislation (art. IV, § 16). Article IV, section 16, California Constitution, provides: "A local or special statute is invalid in any case if a general statute can be made applicable."[4]

The test for upholding statutes challenged under article IV, section 16 is "If the statute is reasonable and non-discriminatory it will be held valid; if not it will be struck down as 'local' or 'special' legislation." (Cal. Const. Revision Com., Proposed Revision of the California Constitution, February 1966, p. 39.) ■ "A summary of the relevant principles appears in *Lelande* v. *Lowery* (1945) 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109], which establishes that, while a legislative classification is improper if it is not founded upon some natural, constitutional or intrinsic distinction which reasonably justifies a difference in treatment, a classification which has a substantial relation to a legitimate object to be accomplished is valid. ■ If any state of facts can reasonably be conceived which would sustain a statutory classification, there is a presumption that this state of facts exists and the burden of demonstrating arbitrariness rests upon the party who assails the classification. ■ The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need is deemed to be the most evident." (*Board of Education* v. *Watson*, 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481]; *Professional Fire Fighters, Inc.* v. *City of Los Angeles*, 60 Cal.2d 276, 288 [32 Cal.Rptr. 830, 384 P.2d 158].)

■ Appellants argue that legislation applying only to county seats that are incorporated cities is special legislation and that a general law could be

---

the original designation. City planning does not lend itself to the application of such a rigid rule of law. Traffic problems alone frequently necessitate the moving of the so-called civic center out of a more congested part of town." (29 Ops.Cal.Atty.Gen. 46.)

[4]In 1957 article IV, section 25, read: "The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:

"      .      .      .      .      .      .      .      .      .      .      .      .      .      .

"Twenty-first—Changing county seats.

"      .      .      .      .      .      .      .      .      .      .      .      .      .      .

"Thirty-third—In all other cases where a general law can be made applicable." In 1966, subsection Twenty-first was repealed and Thirty-third was transferred to article IV, section 16.

made applicable to all county seats. Section 23600, Government Code, is as general as possible. It relates to all "county seats of the respective counties of the State, as fixed by law and designated in this article . . ." of which there are fifty-eight. The second sentence of the first paragraph deals with the effect of annexation to all incorporated cities which are the locations of county seats of which there are at least fifty. Manifestly such a statute could not possibly include county seats which are unincorporated cities or towns. Thus such a classification which includes all county seats which are incorporated cities regardless of any other factor of population, time of incorporation, area, etc., is a reasonable one. As hereinbefore discussed, the purpose of the addition of the second sentence to section 23600 and enactment of section 24256 in 1957 was the removal of any arbitrary classification that might exist due to dictum in *Jordan* v. *Board of Supervisors,* 99 Cal.App.2d 356 [221 P.2d 977], the effect of which was to restrict a county seat merely because it happened to be located at an incorporated city. We resolve the issue in favor of a finding that there exists a proper and rational basis for the statutory classification found in sections 23600 and 24256.

Nor, as urged by appellants, do these sections accomplish the removal of a county seat without the required action of the electorate specified in article XI, section 2. They argue that annexation of the building site to the present city in November 1968 is not relevant, a county seat and the town or city within which it may be located are not one and the same and when the city grows the county seat does not change with it thus the construction of the new courthouse outside of the original one square mile which constituted the Town of San Buenaventura at the time it was designated as the county seat of Ventura County constitutes a removal of the county seat within the meaning of article XI, section 2. Appellants' strained interpretation of the constitutional provision recognizes no distinction between removal of the county seat by designating a city or town (Camarillo, Thousand Oaks, etc.) in Ventura County other than the Town of San Buenaventura to be the county seat, and enlarging by annexation the county seat already established. By giving effect to the plain common-sense meaning of the language of both section 23600 and article XI, section 2, we can only conclude that the "removal" contemplated in the constitutional provision is a transfer of the seat of county government from San Buenaventura to some other city or town in Ventura County not a change of the site of the courthouse from one part of the City of San Buenaventura to another part. Appellants would have an election to obtain consent of the people of the county to relocate the courthouse within the City of San Buenaventura.

Moreover, the Victoria Avenue site while outside of the original boundaries of the Town of San Buenaventura is within the incorporated territory

of the present city and is at the county seat. While the designations of San Jose, San Buenaventura and Visalia are not exactly parallel, Visalia not having been incorporated at the time it was designated the county seat whereas San Jose and San Buenaventura were incorporated and had fixed boundaries, the original designations did use the word "at" as in "at the Town of San Buenaventura." This language thus falls within the rationale of *Jordan* which followed *Murdoch* v. *Klamath County Court*, 62 Ore. 483 [126 P. 6], in which the court held that the word "at" in reference to Linkville meant "nearness" or "proximity" but did not limit the area of the county seat to the corporate boundaries themselves. Thus without "removal" of the county seat the courthouse was located "at" Visalia, "at" Klamath Falls and "at" San Jose although outside of the original city limits. But of more significance, the employment by the Legislature of the word "at" in 1872 providing that the seat of justice of Ventura County shall be "at the Town of San Buenaventura" would indicate that it had no intention of requiring the courthouse to be in the then existing corporate limits or of barring a future location of the courthouse on another site annexed to the city.[5] Section 23600, Government Code, is entirely consistent with this.

Finally, our Constitution has facilitated the development and expansion of county seats. Nowhere in the Constitution is there a definition of "county seat," nor does it prescribe the extent, area or population of county seats or the offices which must be conducted or located there. These matters were left entirely to the Legislature. For example, sections 24250, 24261 and 25081, Government Code, provide that sheriffs, clerks, auditors, recorders, treasurers and superior court judges shall have offices, and supervisors shall hold regular meetings at the county seat. When San Buenaventura was designated as the county seat in 1872 the organizational act provided for three supervisors, one county judge and eight other officers of which only the county judge and four of the officers were required to have offices and reside at the county seat. When the Constitution was adopted in 1879 the inclusion of article XI, section 2, was not intended to fix for all time either the confines or characteristics of county seats. Since that time county seats have expanded in area and population and changes in character have evolved. In 1880 the requirement that the county judge, treasurer and recorder reside at the county seat was deleted and since that time other officers have been included; and over the years the requirement that some officers have their offices at the county seat was also deleted. So, too, as county seats have expanded county buildings have spread, many of which are now located outside the boundaries of the original incorporation. Legislation enacted in the years since the adoption of the Constitution reflects

---

[5]In 1872, during the same session of the Legislature an act was passed to enable the inhabitants of territory adjacent to any city of the state to annex the same thereto.

continuous statutory change in relation to cities and towns designated as county seats in this state, obviously to accommodate the rapidly increasing population and the necessities it creates, need for extended county services, building congestion and traffic problems. The number of officers required to reside at county seats has decreased as has the number of officers required to maintain offices there; branch courts have been established; cases once required to be heard at the county seat may be heard elsewhere; the number of county services has multiplied as has the number of county offices and employees; county buildings to accommodate expanded services have increased and relocated and physically the courthouse itself has spread into numerous facilities. Thus, section 23600, Government Code, which provides that where a county seat is an incorporated city it includes all annexed territory is reasonable and practical, makes good legislative sense and is consistent with the rapid growth of California cities within the outline established by the Constitution. The erection and construction of a new courthouse on the site selected is not, in our opinion, a removal of the county seat within the meaning of the language used in article XI, section 2, of the California Constitution.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 15, 1970.