TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION | : |
| | :      No. 93-102 |
| of | : |
| | :      <u>MAY 27, 1993</u> |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| CLAYTON P. ROCHE | : |
| Deputy Attorney General | : |
| | : |

---

THE HONORABLE DAVID NAWI, COUNTY COUNSEL, SANTA BARBARA COUNTY, has requested an opinion on the following question:

What limitations are placed upon the frequency of adjourned regular meetings of a county board of supervisors that are held outside the county seat?

CONCLUSION

No express statutory limitations are placed upon the frequency of adjourned regular meetings of a county board of supervisors that are held outside the county seat; accordingly, the frequency of such meetings is for the board of supervisors to determine in the exercise of its discretion.

ANALYSIS

The Legislature requires each county board of supervisors to hold its "regular" meetings, as distinguishes from its "special" meetings (Gov. Code, § 25022),[1] at the county seat.[2] Section 25081 states: "By ordinance the board shall provide for the holding of regular meetings of the board at the county seat."

---

[1] All section references are to the Government Code unless otherwise indicated.

[2] The "county seat" is specified by statute for each county (§§ 23600-23658) but may be changed by the county's electorate (§§ 23680-23690). (See *Ventura Realty Co.* v. *Robinson* (1970) 10 Cal.App.3d 628, 631; 29 Ops.Cal.Atty.Gen. 42, 43 (1957).)

The Legislature has also authorized local agencies, including a county board of supervisors, to adjourn their regular meetings to a time and place specified in the order of adjournment. Section 54955, part of the Ralph M. Brown Act (§§ 54950-54962), provides:

> "*The legislative body of a local agency may adjourn any regular*, adjourned regular, special or adjourned special *meeting to a time and place specified in the order of adjournment*. Less than a quorum may so adjourn from time to time. If all members are absent from any regular or adjourned regular meeting the clerk or secretary of the legislative body may declare the meeting adjourned to a stated time and place and he shall cause a written notice of the adjournment to be given in the same manner as provided in Section 54956 for special meetings, unless such notice is waived as provided for special meetings. A copy of the order or notice of adjournment shall be conspicuously posted on or near the door of the place where the regular, adjourned regular, special or adjourned special meeting was held within 24 hours after the time of the adjournment. *When a regular or adjourned regular meeting is adjourned as provided in this section, the resulting adjourned regular meeting is a regular meeting for all purposes.* When an order of adjournment of any meeting fails to state the hour at which the adjourned meeting is to be held, it shall be held at the hour specified for regular meetings by ordinance, resolution, bylaw, or other rule." (Emphases added.)

This request for our opinion essentially presents a follow-up question to the ones presented in 58 Ops.Cal.Atty.Gen. 554 (1975). In our 1975 opinion we concluded that a county board of supervisors could hold adjourned regular meetings away from the county seat. We recognized therein that sections 25081 and 54955 could be harmonized in two different ways: (1) a regular meeting could be held at the county seat (§ 25081) and then adjourned to any place, whether within or outside the county seat, specified in the order or adjournment (§ 54955), or (2) the regular meeting could be adjourned to any place (§ 54955) that was within the county seat (§ 25081). In choosing the former alternative, we stated with respect to section 54955:

> "The . . . first sentence appears to give the board of supervisors as a `legislative body' complete discretion as to the location of an `adjourned regular meeting.' However, the fifth sentence . . . might indicate that an `adjourned regular meeting' as well as a regular meeting must be held at the county seat by virtue of the provision of section 25081, *supra*. However, a more reasonable construction of such sentence would be that such was intended to make clear that no restrictions were intended to be placed upon the scope of an adjourned regular meeting -- that is, its permissible scope is to be as if the meeting had never adjourned.

> ". . . it would seem that section 54955 . . . should be construed together with the specific provisions related to the government of counties, and the fullest effect be given to both. [Citation.] It might, however, he argued that the specific provisions of section 25081 should prevail over the more general provisions of section 54955. This would be a possible interpretation if an `adjourned regular meeting' is the absolute equivalent of a regular meeting. However, it is still possible to state that section 25081 requires the initial convening of a regular meeting at the county seat, but that section 54955 permits a regular meeting to be adjourned thereafter to any legitimate location specified in the notice of adjournment. This latter construction is bolstered by the fact section 54955 requires posting of the notice of adjournment so the public may know where and when the meeting will reconvene. These are the basic purposes of section 25081 -- that is, to let the public know when and where regular meetings will be held. Thus, the basic purposes of

section 25081 would be served by section 54955 as to an `adjourned regular meeting.' Also, such latter construction would give effect to both sections 25081 and 54955." (Id., at pp. 557-558.)

We are now asked if any limitations are placed upon the frequency of holding a board of supervisor's adjourned regular meetings outside the county seat. We conclude that no express statutory limitations have been imposed by the Legislature, and hence a board may exercise its discretion in determining how often to hold its adjourned regular meetings in a location other than at the county seat.

Preliminarily, we note that the Legislature has not amended either section 25081 or section 54955 since issuance of our 1975 opinion. "Opinions of the Attorney General are entitled to great respect" (*City of Victorville* v. *County of San Bernardino* (1991) 233 Cal.App.3d 1312, 1320); "`[i]n the absence of controlling authority, these opinions are persuasive "since the Legislature is presumed to be cognizant of that construction of the statute"'" (*California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 17); and if the Attorney General's interpretation of a statute "`"were contrary to the legislative intent . . . some corrective measure would have been adopted . . ."'" (*Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 227). With these principles of statutory construction in mind, we decline to address again whether a county board of supervisors may adjourn a regular meeting to a place outside the county seat. The issue here is: how often may this be done?

In our 1975 opinion we mentioned various reasons why a board of supervisors may wish to meet at a location outside the county seat:

". . . There may be numerous situations where a board of supervisors should be able to meet away from the county seat, and even possibly outside the county itself. For example, boards of supervisors may wish to meet with city councils in other cities. They may wish to view certain property. They may wish to bring a local matter to the citizens to insure the proper grass-roots input. An example of the latter would be the preparation of an element of a general plan. In short, flexibility as to location of certain meetings may be both desirable, and in some cases virtually necessary for the proper functioning of county government. . . ." (58 Ops.Cal.Atty.Gen., *supra*, 556-557.)

On the other hand, we recognize that interested citizens may be precluded from being heard upon matters of specific interest to them when a regular meeting is adjourned to a location outside the county seat. We believe that the frequency of such adjournments under the terms of section 54955 should not unreasonably prohibit, in effect, attendance by interested parties who would otherwise need to travel significant distances. Also, adjourned regular meetings outside the county seat may not become a substitute for regular meetings at the county seat; compliance with section 25081 is still a requirement in harmonizing and giving effect to both statutes.

In 74 Ops.Cal.Atty.Gen. 89, 94 (1991), we addressed the principles of law governing the exercise of discretion by a governmental body:

"However, even where a law `vests an agency with unlimited discretion, or power to exercise a judgment of high order [that fact] does not confer unrestricted power.' (*Cerini* v. *City of Cloverdale* (1987) 191 Cal.App.3d 1471, 1479-1480.) For a court, however, to interfere, it would have to be demonstrated that there was `convincing evidence of fraud, arbitrary action or an abuse of discretion.' (*Superior Bedding Co.* v. *Erensberg* (1961) 193 Cal.App.2d 86, 91.)

"As stated by one leading authority:

"`. . . Where a municipal board is authorized to do a particular act in its discretion, the courts will not control that discretion unless manifestly abused, nor inquire into the propriety, economy and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution. A court cannot substitute its judgment for that of the municipal authorities if there is room for debate. . . .' (2 McQuillin Mun. Corp. § 10.33 (3rd Ed. 1988 Rev. Vol.), footnotes omitted.)"

Here, it should be observed that not only is a county board of supervisors answerable to the courts for an abuse of discretion, but the supervisors are also answerable to the electorate with respect to the performance of their official duties. (See *People* v. *Municipal Court* (1972) 27 Cal.App.3d 193, 208 [district attorney vested with discretionary power in determining whether to prosecute; "In the final analysis, the district attorney . . . is answerable to the electorate for the manner in which he conducts his office"].) Reasonableness in the performance of discretionary duties may thus be tested at both the courthouse and the ballot box.

In short, since no express statutory limitations are placed upon the frequency of adjourned regular meetings of a county board of supervisors that are held outside the county seat, the frequency of such meetings may be determined by the board of supervisors in the exercise of its discretion.

\* \* \* \* \*