## OLIVE COX v. DORIS LEVERETT WOOD.

No. A-3866. Decided March 25, 1953.
Rehearing overruled May 6, 1953.
(256 S.W. 2d Series 841)

284

*Henry Wade,* District Attorney, *J. J. Fagan, Julien C. Hyer,* and *John B. Webster,* Assistants District Attorney, for petitioner.

The Court of Civil Appeals erred in holding that the judgment rendered by the Juvenile Court of Dallas County was void because rendered at a place other than in the Court House. State ex rel Rector v. McClelland, 148 Texas 372, 244 S.W. 2d 706; Jordan v. Crudington, 149 Texas 237, 231 S. W. 2d 641; Ralls v. Parrish, 147 S. W. 564.

*Burt Barr* and *Earl R. Parker,* both of Dallas, for respondent.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

In this case the Juvenile Court of Dallas County, presided over by a district judge of that county, adjudged that two minor children of respondent, their mother, were dependent and neglected children and placed them in the custody of the Chief Probation Officer of Dallas County. The trial was held in the courtroom of the Dallas County Juvenile Home located at 4711 Hines Boulevard on land annexed to the City of Dallas in August, 1947. Respondent was present at the hearing and the sole question before us is the effect of the location of the courtroom upon the validity of the proceedings conducted therein. The Court of Civil Appeals, in reversing the trial court's judgment and remanding the cause "to the District Court for a new trial in the Courthouse of Dallas County," held that "the trial of this case was at a place not authorized by law, and since not authorized, the judgment rendered therein is void." 251 S. W. 2d. 798. Petitioner, Olive Cox, is Assistant Probation Officer of Dallas County.

The holding of the Court of Civil Appeals was based on the proposition that until a statutory exception was made for the Juvenile Court of Dallas County under Section 7, Article 5 of the Constitution of Texas, the "District Courts of Dallas County are confined, in the holding of Court, to the places now provided in the courthouse in the City of Dallas as the county

seat of Dallas County, as said City existed at the time it was designated as the county seat of Dallas County." That provision of the Constitution specifies that the District Court, "shall conduct its proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law."

We have concluded that a solid basis for a correct solution of the problem before us is disclosed in the numerous Acts which have been passed by the Legislature to aid the State in the performance of its obligations with respect to juveniles, both delinquent and dependent.

Following the enactment of Arts. 34 and 35, P. C. 1879, and Arts. 34 and 35, P. C. 1895, relating to the punishment of minors for criminal offenses, it appears that the first comprehensive legislation on juveniles was enacted in 1907, Acts 30th Leg., G. L., chap. 64, p. 135, and chap. 65, p. 137, ib. They were carried into the Revised Statutes of 1911 as Title 38 under the designation "Courts - Juvenile". After defining *dependent* or *neglected* child, chap, 64 described procedure for trial of the issue of dependency or neglect and disposition of the child found to be dependent or neglected. It provided for trial in either the county or district court; and declared the county and district courts "shall at all times be deemed in session for disposition of same, and when so sitting may be known as *the* 'Juvenile Court'." Chap. 65, supra, contained parallel provisions with respect to *delinquent* children.

In the Revised Statutes of 1925 *district courts* are covered by Title 40, while *juvenile courts* are dealt with in Title 43, Arts. 2329 to 2338, both inclusive. Art. 2329 vested original jurisdiction over delinquent children in county courts, district courts and criminal district courts, all of which, in trial of such delinquents, were designated as the *Juvenile Court*, were to be *in session at all times*, and were to have a juvenile docket. It conferred original jurisdiction over dependent and neglected children upon district courts exclusively with all findings to be entered in a "Juvenile Record".

The next comprehensive statute was passed in 1943, Acts 48th Leg., G. L., Reg. Ses., chap. 204, pp. 313 to 319. It related primarily to delinquent children and established "in each county of the state a court of record to be known as the Juvenile Court" to be in session at all times. In counties having a juvenile board, the board could designate the county court or one or

more of the district courts to be the juvenile court for that county; in all other counties either the district or the county court was to be the juvenile court "as agreed between the judges of each respective courts." Other significant provisions of this act were that "Juvenile Court records shall not be inspected by persons other than probation officers or other officers of the Juvenile Court unless otherwise directed by the Court"; that in hearing of juvenile cases the general public may be excluded; that suitable quarters "shall be provided by the Commissioners Court of each county for the hearing of cases and for the use of the judge, the probation officer and other employees of the court."

Sec. 4 of this Act of 1943 was amended in 1947, Acts 51st Leg., Reg. Ses., G. L., chap. 368, p. 702, to make it applicable to dependent and neglected children in those counties wherein the juvenile rourt is held by a distrirt judge.

The Act of 1943, supra, came under fire in Dendy et al. v. Wilson et al., 142 Texas, 460, 179 S. W. 2d. 269, a delinquency proceeding begun before the county judge sitting as the juvenile court. Among other questions it was contended that the trial court erred in refusing to give the delinquent children a public trial or a trial by jury. In overruling both contentions we held that the Act created juvenile courts with special jurisdiction over delinquent children; that such a court is not a criminal court but is *a special court created by statute;* and that the Act must be liberally construed to accomplish its dominant purpose to abolish "the harsh rule that was applied to children in former laws."

So, by the clear language of the statute and under the holdings of this court, the trial court we have here is "a special court created by statute", which the Legislature has repeatedly said shall be known as the "juvenile court" and which in the last two codifications of our statutes (R. S. 1911 and R. S. 1925) has been treated in one title, whereas the district court has been treated in another. It is a court which is in session at all times; a court which may exclude the public from its trials; a court whose records cannot be inspected by anybody other than probation officers or other officers of the court in the absence of a direction by the court; and a court which the Legislature hopes shall be "presided over by a judge who has a sympathetic understanding of the problems of child welfare." In short, we have a court which, although presided over by a

district judge, has substantial attributes wholly at variance with some that are recognized as normally belonging to a district court.

■ Respondent points to the fact that Sec. 24-A, Art. 2338, which was a part of the Act of 1943, supra, before the amendment of 1947, supra, provides that the district court only shall have original jurisdiction of dependency cases. Even so, if when it becomes a juvenile court it has powers in many respects squarely contrary to our concept of the powers of a district court, (e. g., perpetual session, trials from which the public may be excluded, and secret records), is there any good reason to apply to it the ancient rule that in general run-of-the-mill litigation the district courts of Dallas County must function in the courthouse of Dallas County or within that limited portion of the City which was in existence when the *"town* of Dallas" was designated as the county seat 107 years ago? (See Sayles' Early Laws of Texas, Vol. 2, p. 36.) What difference can it make that the site of the Juvenile Home and its courtroom is not within the bounds of the "town of Dallas" of a century ago when it admittedly is within the present limits of the City of Dallas?

■ The facts proved in this case to show that the two children are dependent and neglected are so sordid and revolting that they demonstrate beyond peradventure the wisdom of the policy of the Legislature to make both the trial and the records of the Juvenile Court secret.

Unfortunately, the vital problem of the juvenile is becoming more complicated and more difficult with the rapid growth of our urban populations. It is undoubtedly the public policy of this state to protect the dependent or delinquent child, at the most critical time of his life, from the impressions he would inevitably get "from the old method of handling minors." Most certainly that policy would not be served by the application of an inflexible rule that the juvenile court of Dallas County, because it is presided over by a district judge, can function only in the courthouse or within the limits of the Town of Dallas as set in 1846. It is, therefore, easy to understand why the Commissioners Court of Dallas County, pursuant to the legislative mandate to provide suitable quarters "for the hearing of cases and for the use of the judge, the probation officer and other employees of the court," constructed it on Hines Boulevard. We see no need to write further.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered March 25, 1953.

Rehearing overruled May 6, 1953.