

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 5, 1957

Honorable Henry Wade
Criminal District Attorney
Dallas County
Dallas, Texas

Opinion No. WW-254

Re: Location of Juvenile Court
in and for Dallas County,
Texas, created by House
Bill No. 940, Acts 55th
Legislature, Regular Ses-
sion, Chapter 511, at
page 1490.

Dear Mr. Wade:

Your request for an opinion, dated August 13, 1957, submits the following question for our consideration:

"Whether the Commissioners Court must provide a court room and quarters for the newly created Juvenile Court in the Dallas County Court House, or whether it may provide the only court room for that court in the Juvenile Home on Harry Hines Boulevard".

Your letter states that the proposed location on Harry Hines Boulevard is within the present corporate limits of the City of Dallas, but outside the limits of the "town of Dallas" at the time the latter was designated as the county seat of Dallas County. You further advise that the Juvenile Court of Dallas County, heretofore created pursuant to Article 2338-1 of Vernon's Civil Statutes, sits at the proposed site on Harry Hines Boulevard. The right of this court to be so located was upheld by the Supreme Court of Texas in the case of Cox v. Wood, 152 Tex. 283, 256 S.W.2d 841.

Section 18 of Article 2338-1 provides for the location of Juvenile Courts created thereunder in the following language:

"Sessions of the court shall be held as the Judge shall from time to time determine. Suitable quarters shall be provided by the Commissioners Court of each county for the hearing of cases and

for the use of the judge, the probation officer
and other employees of the court."

In Cox v. Wood, supra, the Supreme Court upheld the
right of the Dallas County Juvenile Court to be located and
hold court sessions at the site on Harry Hines Boulevard here
in question. It was urged before the Court that under Sec-
tion 7 of Article V of the Constitution of Texas, the district
courts were confined, in the holding of court to the places
now provided in the court house in the City of Dallas as the
county seat of Dallas County, as said city existed at the
time it was designated as the county seat of Dallas County.
That provision of the Constitution specifies that the District
Court "shall conduct its proceedings at the county seat of
the county in which the case is pending, except as otherwise
provided by law."

It was further urged that the Legislature had made
no exception with reference to the place that sessions of the
court could be held. In reply to this argument grounded upon
the foregoing constitutional provision, the Supreme Court
held that the Juvenile Court was not a "District Court" within
the meaning of this constitutional provision "but is a special
court created by statute". The Court then said:

" . . . What difference can it make that the
site of the Juvenile Home and its courtroom is not
within the bounds of the 'town of Dallas' of a
century ago when it admittedly is within the
present limits of the City of Dallas?"

The Court further said:

" . . . It is undoubtedly the public policy
of this state to protect the dependent or delin-
quent child, at the most critical time of his
life, from the impressions he would inevitably
get 'from the old method of handling minors'.
Most certainly that policy would not be served
by the application of an inflexible rule that
the Juvenile Court of Dallas County, because it
is presided over by a district judge, can function
only in the courthouse or within the limits of the
Town of Dallas as set in 1846. . . . We see no
need to write further."

Our primary concern is the applicability of the
Court's holding in the Cox case to the new Juvenile Court of
Dallas County created by House Bill 940. With reference to

where the new court shall hold its session, Section 11 of House Bill 940 provides:

"The said Juvenile Court and Court of Domestic Relations shall be courts of record, shall sit and hold court at the county seat of Dallas County, . . ." (Emphasis added)

The answer to the question submitted hinges upon the construction of the underscored portion of the above section.

Since the court is of statutory origin, the right of the Legislature to prescribe the site where the court shall hold its sessions is unquestioned.

The term "county seat" was defined by the Supreme Court of Texas in the case of Turner, et al v. Tucker, et al, 113 Tex. 434, 258 S.W. 149, as follows:

"In the light of our Constitutions and statutes, it seems to us not to admit of any reasonable doubt that the words 'county seat', as used in section 2 of article 9, of the Constitution, mean the place where the courthouse is situated, where the county offices are kept, and where the district and county courts for the county are held. . . .

"We give the words 'county seat' their ordinary signification. The Century Dictionary defines the 'county seat' to be:

"'The seat of government of a county, the town in which the county and other courts are held, and where the county officers perform their functions'."

At the time House Bill No. 940 was enacted, the site on Harry Hines Boulevard was a place where county offices were kept and also a place where the existing Juvenile Court of Dallas County held its sessions. It must be presumed that the Legislature was aware of these facts when House Bill 940 was enacted, since it may be presumed that the Legislature "knew", "had in mind", or "was familiar with" the "law of the land", also prior decisions of the courts - at least those of last resort - pertaining to the subject matter. It may also be presumed that the Legislature knew facts of common notoriety in the State, as well as any circumstances or conditions affecting or relating to the particular enactment. 39 Tex. Jur. 248 and the cases there cited.

The designation of the town of Dallas as the county seat of Dallas County was first made by a special Act of the Legislature, passed April 18, 1846. This Act is set forth in Volume II of Sayles' Early Laws of Texas at page 36, and is shown as Article 1633, reading as follows:

" . . . until otherwise provided by law, the town of Dallas shall be the seat of justice for Dallas county, and all the courts for said county shall be held thereat."

As stated by your letter, the town of Dallas at the time of its designation as the county seat of Dallas County was unincorporated and had no fixed boundaries, or if it can be said that there were fixed boundaries, such boundaries cannot now be determined with any degree of accuracy. In Ralls v. Parrish, 105 Tex. 253, 147 S.W. 564, the Supreme Court held that:

" . . . Where a town is duly incorporated, it is embraced within definite metes and bounds and without respect to an aggregation of inhabited houses, but, where it is an unincorporated town, its area is defined to be and to embrace the aggregation of inhabitants and the collection of occupied dwellings and other buildings constituting such town. . . .

" . . . it is proper to say that the situs of an unincorporated town will not be controlled by the platted area of such town without reference to the collection of inhabited houses, which together with the area appurtenant to same in the ordinary signification of the meaning of the word constitute the town. . . . "

If the term "county seat" as used in House Bill 940 is to be construed as embracing only that area included within the limits of the town of Dallas at the time the latter was designated as the county seat, the metes and bounds of the included area, in view of the foregoing rule, would doubtless be a matter of considerable conjecture.

In seeking to resolve the question submitted we have carefully considered a number of cases from other jurisdictions which hold in substance that when a city or town is selected as the county seat, the boundaries of such city or town, as they then exist, become the boundaries of the county seat, and subsequent inclusion of more territory, does not remove the

county seat. Notable among such cases are: <u>Marengo County v. Matkin</u>, 32 So. 669 (Ala. Supp., 1902); <u>Way v. Fox</u>, 80 N.W. 405 (Iowa Supp., 1899); <u>State ex rel Kellog, Attorney General, v. Board of County Commissioners of Atchison County</u>, 24 Pac. 87 (Kan. Supp., 1890).

A relaxation of the rigid rule announced in the foregoing cases is evident in the more recent cases of <u>Jordan v. Board of Supervisors of Tulare County</u>, 221 P.2d 977 (Calif. App., 1950) and the case of <u>Murdoch v. Klamath County Court</u>, 126 Pac. 6 (Ore. Supp., 1912). Each of the foregoing cases sustained the right of the county to erect a courthouse on a site outside the original limits of the town or city designated as the county seat. In holding that the courthouse, as so located, was "at" the county seat of Visalia, the Court in the <u>Jordan</u> case said:

> "The primary idea in the word 'at' is 'nearness' or 'proximity', and it is commonly used as the equivalent of 'near' or 'about'. . . ."

The question with which we are here concerned does not involve the removal of the county seat of Dallas County. The only question involved is the right of a <u>special court created by statute</u> to sit at a place outside the limits of the town of Dallas as that city existed 107 years ago. Our opinion is necessarily confined to the meaning of the phrase "at the county seat of Dallas County" as used in House Bill 940. The question, as we view it, is one of legislative intent. The meaning ascribed to the phrase by the courts when used in other contexts or other statutory or constitutional provisions is an aid to be considered, but same cannot be given conclusive effect.

A cardinal rule of statutory construction is that an act should be given a fair, rational, reasonable, and sensible construction, considering its language and subject matter and with a view to accomplishing the legislative intent and purpose. 39 Tex. Jur. 172 and the cases there cited.

On the question of reasonable construction, the Supreme Court in the <u>Cox</u> case, <u>supra</u>, saw no "good reason to apply to it (the Juvenile Court) the <u>ancient</u> rule that in general-run-of-the-mill litigation the district courts of Dallas County must function in the courthouse of Dallas County or within that limited portion of the city which was in existence when the 'town of Dallas' was designated as the county seat 107 years ago." In view of all the circumstances, we think that if the Legislature had intended to preclude the new Juvenile Court from sitting at the location where the

existing court was then sitting, the language used in expressing such intent would have left no room for doubt or question. This seems particularly true in view of the fact that the location of the existing court had been the subject of both controversy and litigation.

You are accordingly advised that it is our opinion that the Juvenile Court created for Dallas County by House Bill 940, may legally sit and hold court at the Juvenile Home on Harry Hines Boulevard, the latter being located within the present corporate limits of the City of Dallas. This conclusion apparently coincides with your own since your letter states that a contrary result would be based upon "a harsh and technical construction" of the language used in Section 11 of House Bill 940.

In accordance with your usual practice, you have submitted an exhaustive brief in connection with your request, which was prepared by Mr. Broyles. Your outstanding cooperation in this respect is of immense assistance to this office and we thank you most sincerely.

## SUMMARY

The Juvenile Court created for Dallas County by House Bill 940, Acts of the 55th Legislature, Regular Session, Chapter 511, page 1490, may legally sit and hold court at the Juvenile Home on Harry Hines Boulevard, said site being within the present corporate limits of the City of Dallas.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Leonard Passmore
Assistant

LP:jl
APPROVED:
OPINION COMMITTEE:
George P. Blackburn, Chairman
James H. Rogers
Arthur Sandlin
Wallace Finfrock

REVIEWED FOR THE ATTORNEY GENERAL
BY:
James N. Ludlum