### ALEX. STUART *et al. v.* H. H. BAIR *et al.*

1. REMOVAL OF COUNTY SEAT. Under the Constitution of Tennessee, art. 10, sec. 4, the Legislature can not, by direct or indirect means, remove a county seat. It can only be done by the concurrence of two-thirds of the qualified voters of the county.

2. WHO MAY MAINTAIN A BILL TO RESTRAIN THE REMOVAL OF A COUNTY SEAT. Citizens and taxpayers of a county can file a bill to restrain the public officers or others from illegally removing a county seat.

3. MULTIFARIOUSNESS. A bill sought to restrain by injunction certain officers of a county from removing the records of the county from the established seat of justice, and in the same bill prayed for an account against other parties for unlawfully expending the public funds of the county in building a jail at the place which the seat of justice was sought to be removed, and the court held the bill to be multifarious.

4. MULTIFARIOUSNESS CURED BY AMENDMENT ON REMANDING A CAUSE. On appeal, a demurrer that contained several grounds of objections to the bill, and among others that the bill was multifarious, and the demurrer was overruled as to all the grounds except that of multifariousness, and the cause remanded; the court held that the defect of multifariousness might be remedied by amendment when the cause should go back into the chancery court for further proceedings.

---

#### FROM COCKE.

---

Appeal from the Chancery Court. H. C. SMITH, Chancellor.

SWANN for Bair.

No counsel marked for Stuart.

DEADERICK, J., delivered the opinion of the court.

On the 10th February, 1872, the complainant Stuart and six other citizens and taxpayers of Cocke county filed their bill in the chancery court of said county against defendant Bair and a number of other citizens of said county, including the sheriff, clerks of the several courts, trustee and register, chairman of the county court, tax collector, and members of the quorum court of said county, and also against Hon. H. C. Smith, Chancellor, and Hon. J. H. Randolph, Circuit Judge.

The bill alleged that the county seat of said county was established by law at the town of Newport, sixty or seventy years ago, court-house and jail erected, and from that time to the time of the filing of the bill, the courts of justice have been held, and the public offices, records, and papers of said county have been kept, in pursuance of law, in said town of Newport; that in —— the town of Newport was incorporated by the Legislature, but no organization by the election of officers ever took place, nor even any of the powers conferred by the act exercised, and the said town has never had a corporate existence.

During the late civil war the jail was destroyed, and at May term, 1866, of the quorum court it was decided to erect a new jail. At the July term, 1866,

of the said court it was resolved by said court that the present site of the court-house and jail was unsuitable, and that a more eligible site should be procured whereon to erect a new court-house and jail. A committee of five persons was appointed by the court to "extend the corporate limits of Newport" across Pigeon river, a distance of two miles.

It is further alleged that the Cincinnati, Cumberland Gap, and Charleston Railroad was completed to Clifton or Newport depot in 1867, and the county court appointed inspectors to hold an election in Clifton to determine whether the corporate limits of Newport should be so extended as to include Clifton.

It is alleged, further, that the county court levied a special tax to build a jail, which was collected and paid over to a receiver, and a jail was erected under the supervision of a building committee appointed by the court, and located on land in Clifton, to which the county had no title, and that at the November quorum court, 1869, an order was made showing and reciting that the committee of five had not reported, and was discharged, and that the corporate limits of Newport were not sufficiently extensive to afford eligible sites for the court-house and jail, and further recites that the court had appointed a committee to extend the corporate limits of Newport so as to include an eligible site for the county buildings. The last committee having made the corporate limits of Newport extend across Pigeon river, and include and absorb the thrifty town of Clifton, was discharged, and a new committee appointed to locate the buildings. This was

done by selecting a site above the depot at Clifton, upon which the building committee have erected a jail, at a cost of $4,000 or $5,000, without any authority.

The bill charges that no such report as to the site was in fact made, and that all these pretended orders were made with the fraudulent purpose of removing the county seat from Newport to Clifton against the wishes of the people of the county; that the court had no power to remove the county seat to Clifton, nor to expend money there for building said jail.

The bill further alleges that on the 17th February 1870, defendants fraudulently procured an act of the Legislature to be passed extending the corporate limits of Newport so as to include Clifton, for the purpose of effecting, in this indirect mode, the removal of the county seat; that Newport had no corporate limits, and that no organization under this act was ever had; that Newport and Clifton are small villages about two miles apart, and separated by a river, and the county court has not located the county buildings in Clifton; that on the 14th December, 1871, defendants procured the Legislature to pass another law, reciting that the court-house in Newport was dilapidated and dangerous, and directing that the courts should be thereafter held in Clifton, in any house that might be provided for the purpose, thus recognizing that Clifton was not part of Newport.

Complainants charge that all these acts were done for the fraudulent purpose of effecting the removal of the court-house by indirect means, and not in the

mode prescribed by law; that the county seat has not been legally removed, and that the county offices, records, and papers are there at the court-house, and that Newport is the county seat, and that the courts should be held there.

The bills pray a perpetual injunction to the public officers from removing their offices, books, papers, records, and public property from Newport, or holding court at Clifton, or elsewhere than at Newport, or from building a court-house or other public building for Cocke county at Clifton, and for an account of county funds in the hands of either of defendants, or illegally expended by them, and for account and general relief.

The defendants demur to the bill, and state numerous causes of demurrer. The substance of the causes of demurrer may be comprehended in the following issues:

1. The validity of the acts of the Legislature to remove the county seat to Clifton, or to include Clifton within the corporate limits of Newport.

2. Have the complainants such an interest in the subject matter of the suit as to give them the right to maintain a bill.

3. Is the bill multifarious.

4. Are the proper parties before the court.

It is very clear that the extraordinary proceedings before the county court, by which they undertook to extend the limits of Newport so as to include Clifton, and locate the county buildings in Clifton, under the pretence that it was a part of Newport, are utterly illegal, null and void.

10—VOL. 8.

The act of the Legislature of February, 1870, was manifestly intended to effect a removal of the county seat from Newport to Clifton, both places being small villages two miles apart, separated by forests, fields, and river.

Under this act no attempt at organization was ever made; nor has the county court, under this act, ordered the removal of the public buildings from their present location, or fixed their location at Clifton.

By the act of the Legislature of the 14th December, 1871, a more direct attempt to remove the county seat from Newport to Clifton is made.. The act provides "that the various courts of Cocke county in said State shall be hereafter held at Newport depot, otherwise called Clifton, in any house that may be provided for the purpose of holding said courts; and each of said courts, at the next term thereof after the passage of this act, shall meet, and adjourn from the dilapidated court-house in Newport to the house that may be provided to hold said courts in at said Newport depot."

The Constitution of the State does not authorize the Legislature to remove the seat of justice of a county from one place to another, either by direct or indirect legislation for that purpose.

Sec. 4 of art. 10 of that instrument provides: "Nor shall the seat of justice of any county be removed without the concurrence of two-thirds of the qualified voters of the county."

The counties of Obion and Cocke are, however, excepted out of the general provision requiring a two-

thirds vote, and as to these counties a majority only is required.

We are of opinion that the complainants, as citizens of the county and taxpayers, may maintain a bill to restrain the defendants from involving them, by illegal and unconstitutional measures, in the payment of taxes, and to restrain the removal of the seat of justice, its records and officers, in furtherance of this object.

The objection of multifariousness is made upon the ground that the bill not only seeks to restrain the removal of the records, etc., to Clifton by certain officers, but it also asks for an account for certain expenditures of taxes collected in the building of a jail by certain other parties.

The jurisdiction of the courts of chancery in a case like the present rests upon its power, by its process of injunction, to inhibit and prevent the doing of alleged illegal and injurious acts.

The expenditures by the committee in the erection of a jail were so made under the orders of the county court, but the means adopted by the county court to effect the removal seem to have been abandoned, and resort had to legislative aid. The expenditure, therefore, by one set of the defendants, made before the filing of the bill, was not so necessarily connected with the apprehended illegal acts of others to accomplish the removal, as that they were all proper parties to the same bill.

The acts of one part of the defendants are accomplished, ended, and abandoned, as a means of attaining the end the bill is filed to prevent.

The acts of the other are threatened and impending, so that whatever may be the liability of the former to refund the taxes collected and expended, the relief sought against them is for matters of a distinct and independent nature from those for which the other defendants are sued.

For these reasons we are of opinion that the bill is multifarious, but as the cause will have to be remanded, this defect may be remedied by amendment.

The result is that the chancellor's decree overruling the demurrer, with the modification above indicated, is affirmed, and the cause will be remanded for the proceedings.

The costs of this court will be paid by the defendants, and the costs of the chancery court as may be hereafter adjudged.