Bouldin *v.* Lockhart.

BOULDIN *et als. v.* LOCKHART *et als.*

1. CONSTITUTIONAL LAW. *Enabling act of* 1873, *ch.* 103, *unconstitutional.
Removal of county seats.* The enabling act of 1873, ch. 103, providing
that a county seat may be removed to any place in the county by a
vote equal to two-thirds of the votes cast in the next preceding Gov-
ernor's election, is in conflict with sec. 4, art. 10 of the Constitution,
which provides, among other things, that " the seat of justice of any
county shall not be removed without the concurrence of two-thirds
of the qualified voters of the county."

2. SAME. *Affirmative consent of two-thirds of the number of voters required.*
The case of *Cocke* v. *Gooch,* 5 Heis., 294, is approved, in which the
word " consent " is held to mean " the active concurrence, and cannot
be substituted for a passive acquiescence."

3. COUNTY COURTS. *Legislative action subject to revision.* The legislative ac-
tion of a County Court is subject to revision or correction by the
courts.

FROM MARION.

Appeal from the Chancery Court at Jasper. W.
M. BRADFORD, Ch.

W. E. B. JONES, for complainant.

A. S. & W. E. COLYAR for defendants.

H. H. INGERSOLL, Sp. J., delivered the opinion
of the court.

This is a bill by certain citizens and tax payers
of Grundy county to prevent the removal of the county
seat from Altamount to Tracy City. Under the act
of 1873, ch. 103, providing for the removal of county
seats, the County Court had ordered an election, which

was regularly held, and the returns made to the chairman of the court; and at its October session, 1873, the following order was made by the court:

"On counting the vote and hearing the proof, the court is satisfied there were 448 legal votes cast for Tracy City in the late election, at which the question of removing the county seat was submitted to the people, and there were 222 votes against removal. Thereupon the court is satisfied that more than two-thirds of all the votes cast were for removal, and the court seeing also that more than two-thirds of the votes in the county, making the Governor's election the test, were cast for removal, and therefore the court, in accordance with the voice of the people, by a two-thirds vote, orders, adjudges, and decrees that the county seat is removed from Altamount to Tracy City, and the clerk of this court will proceed to remove the books and papers pertaining to this court, and he will remove them to Tracy City."

Further proceedings, not necessary herein to be noticed, were taken in the case, but the material facts are recited in the former opinion of this court in regard to the same subject matter reported in 3 Baxter, 262, when the case was before the court upon writs of *certiorari* and *supersedeas*, also the opinion of Chancellor Cooper dissolving the injunction in this case. 1 Ch. R., 419.

The objection here taken to this order of removal is, that it is unconstitutional. The Constitution of 1870, art. 10, sec. 4, among other things, contains this prohibition: "Nor shall the seat of justice of any

Bouldin *v.* Lockhart.

-county be removed without the concurrence of two-thirds of the qualified voters of the county."

The enabling act of 1873 aforesaid provides: "That the county seat shall not be removed to any place unless a vote is cast for the removal to said place equal to two-thirds of the votes cast in the next preceding Governor's election; but if the proposition to remove the county seat received the requisite number of votes, then the County Court shall proceed to make all necessary provisions for removal."

It was under this act that the order of the County Court was made. Complainants insist that no valid order of removal can be made, and the county seat cannot be changed unless two-thirds of all the qualified voters of the county have actually voted for removal. Respondents urge that the act of assembly authorizing a removal, if a vote equal to two-thirds of the vote polled at the last Governor's election is cast for it, is a legislative declaration of what shall constitute or be considered two-thirds of the qualified voters of the county, and therefore the order was valid. It is argued for them with much force that it would be inconvenient and almost impossible to ascertain the exact number of voters in a county on any given -day, and therefore the vote on the Governor's election and the vote on the subject of removal ought to suffice for criteria, and if two-thirds of the greatest number of persons voting at either of these elections vote for removal, that ought to suffice, and the voters not voting, ought not to be counted for this purpose. And if a voter remains away from the polls

on an election to remove the county seat, he ought to be regarded as consenting to the removal because he does not vote against it. This argument is ingenious and persuasive, but in the case of *Cocke et al.* v. *Gooch et al.,* 5 Heis., 294, in construing another clause in this very section of the Constitution, which forbids that any part of a county shall be taken off "without the consent of two-thirds of the qualified votes," this argument is met and refuted, and it is declared that "the word consent here means the active concurrence, and cannot be substituted for by a passive acquiescence." In the clause now under consideration, the word "concurrence" is used instead of "consent." It is a word of stronger import than "consent," and therefore the case referred to is conclusive of this one upon this point. And following it, we hold that it requires the affirmative vote of two-thirds of the qualified voters of the county to authorize the removal of a county seat. It is next urged for respondents that the act of the County Court was legislative in its character, and not subject to revision or correction by the courts. We do not think so. Surely there is no more sanctity in a legislative act of a County Court than that of the General Assembly. The agent is not above his principal. It is true the County Court, in ordering the removal, was exercising legislative authority delegated to it by the. General Assembly; but even the Legislature cannot act in violation of the Constitution. We declare, we are bound to declare, acts of Assembly void, when they conflict with the Constitution; and we cannot

Bouldin v. Lockhart.

hesitate to make a like declaration with regard to the unconstitutional order of a County Court. Again, it is urged for respondents that the County Court is a special tribunal for the purpose of declaring the result of the vote, and of determining whether two-thirds of the qualified voters concur in the removal, and therefore its decision is conclusive and final, and cannot be reviewed or annulled in equity. This conclusion might be correct if the court had merely so declared. How this is we need not and do not now decide. It is sufficient here to say that the County Court have not declared that two-thirds of the qualified voters, as required by the Constitution, have voted for the removal, but that "two-thirds of the votes in the county, making the Governor's election the test, and two-thirds of all the votes cast were cast for removal," and therefore the removal is ordered. This order shows on its face that an arbitrary and not the constitutional test was applied, and that in making it the County Court acted in violation or disregard of the constitutional provision. We must, therefore, declare it void, for it so appears upon its face; and no tribunal, general or special, legislative, judicial, or ministerial, may act in violation of the Constitution. It is supreme and paramount, and to its mandates all must yield obedience.

Lastly, it is objected that inasmuch as, since the dissolution of the injunction, an actual removal of the county seat has been effected from Altamount to Tracy City, and the removal is in the nature of a political act, so that the courts have no control over it, and

cannot order its return, and thus place affairs *in statu quo* at the filing of the bill, the same must be dismissed, for no relief can be granted by retaining it. We cannot assent to this. Recognizing the change, as resulting from the change in fact, complainants concede that no order for the return of the county seat can be made, and do not ask it. What they now seek is a decree declaring the order of removal void, and an injunction to prevent the commissioners from further proceeding to erect the county seat at Tracy City, and to forbid the County Court from levying taxes or incurring further expense for this purpose. To this they are entitled, and decree will be entered accordingly.

The other relief sought in the original bill complainants do not here insist upon, and they are not entitled to it. In these respects the bills will be dismissed. The costs of the cause in the Chancery Court, accrued before the filing of the amended bill, will be paid by complainants in the original bill. The remaining costs of that court, and all costs of this court, will be decreed against defendants.