STATE OF TENNESSEE ex rel. HELEN F. CHEEK et al.

*v.*

J. L. ROLLINGS, County Judge of Grundy County,
Tennessee et al.

(*Nashville,* December Term, 1956.)

Opinion filed December 6, 1957.

A. A. KELLY, South Pittsburg, JOHN F. GREEN, Winchester, WHITE, GULLETT & PHILLIPS, Nashville, for appellants.

FRANK DAVENPORT and WALTER H. GRISWOLD, McMinnville, for J. L. Rollings, *et al.*, appellees.

THOMAS E. FOX, Assistant Attorney General, for George F. McCanless, Attorney General.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The principal question presented by this appeal is whether Section 1, Article VI of the Constitution of Tennessee, which provides for the vesting of the judicial power in one supreme court and in such circuit, chancery and other inferior courts as the legislature shall from time to time, ordain and establish, is to be construed as

limited or curtailed especially in the establishment of circuit and chancery courts, by that part of Section 9, Article XI of the Constitution of Tennessee, which requires approval of local acts affecting a particular county or city.

Under Chapter 5, Private Acts of 1913, the Chancery Court for Grundy County met in Altamont and Tracy City. In 1957, exercising the power conferred on it by Section I, Article VI, the General Assembly enacted Chapter 2, Public Acts of 1957, and discontinued all meetings of the Chancery Court at Tracy City.

The act was attacked on the ground that it violated the part of Section 9, Article XI, which requires local approval. The Chancellor sustained the Act and the complainants have appealed.

This cause, heard on demurrer, attacks the constitutionality of Chapter 2 of the Public Acts of 1957. It charges that the seat of justice of Grundy County, has been located and maintained at Tracy City since 1913, and that this Act attempts to remove this seat of justice from Tracy City to the Town of Altamont.

It further charges that such attempted removal from Tracy City violates Article X, Section 4 of the Constitution of Tennessee, which provides:

"* * * nor shall the seat of Justice of any county be removed without the concurrence of two-thirds of the qualified voters of the County."

It charges that this Act was:

"* * * private or local in form or effect applicable to a particular County, of Grundy in its governmental capacity."

Complainants charge that such an Act is "void and of no effect unless the Act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected."

The bill then prayed for a temporary injunction against the County Judge to restrain him from attempting to close any of the offices of county officials in the Courthouse at Tracy City, or from doing any act that would constitute an abandonment of the seat of justice at Tracy City, or from removing any records from Tracy City to the Courthouse at Altamont, Tennessee.

The Attorney General was made a party and he filed an answer stating the Acts of 1913, establishing the Circuit and Chancery Courts at Tracy City, were enacted pursuant to the power granted to the General Assembly by Article VI, Section I of the Constitution, providing that the judicial system of the State shall consist in part of "such other inferior courts as the General Assembly may ordain and establish."

The answer sets out that the power to establish such special courts, carried by necessary implication a like power to abolish the same whenever, in the opinion of the General Assembly, the public welfare required such.

The Attorney General further stated that Chapter 2 of the Public Acts of 1957, was an exercise of such power

on the part of the General Assembly and that it did not constitute an Act "private or local in form or effect applicable to a particular county either in its governmental or proprietary capacity," but to the contrary, was an Act dealing with and regulating a particular phase of the judicial system of this State.

The defendants by demurrer contend:

First: That complainants are not adversely affected in any way by Chapter 2 of the Public Acts of 1957;

Second: That Chapter 2 of the Public Acts of 1957 is a valid and constitutional statute and does not have to be approved by a two-third vote of the County Court of Grundy County or a majority of the voters of said County;

Third: That Tracy City is not a constitutional, alternative and coexistent seat of Justice of Grundy County and does not fall within the protection of Article X, Section 4 of the Constitution of Tennessee, and Tennessee Code Annotated, sec. 5-401, and that the offices affected may be legally moved from Tracy City to Altamont since the latter is the only seat of justice of said County.

Fourth: That the Town of Altamont is the County seat of Grundy County, and that Chapter 5 of the Private Acts of 1913 did not create or establish a seat of justice at Tracy City within the contemplation of Article X, Section 4 of the Constitution of the State of Tennessee, but only established branch courts with circuit and chancery jurisdiction and that the abolishing of said courts by repeal of this Private Act was valid, legal and constitutional.

By Chapter 204, of the Acts of 1843-44 the County of Grundy was established by taking away parts of the Counties of Warren and Coffee. By Section 5 of this Act it was provided, "* * * that for the due administration of justice, the different courts to be holden in said County of Grundy, shall be held at Beersheba Springs until the seat of justice shall be established * * *"

By Chapter 96 of the Acts of 1847-48, Section 1, the following provision is made:

"Be it Enacted By The General Assembly Of The State of Tennessee, That the Town of Altamont in the County of Grundy, be and the same is hereby established as the permanent seat of justice of Grundy County."

In *Ellis v. State,* 92 Tenn. 85, 93, 20 S.W. 500, 502, it is said:

"The 'seat of justice,' within the meaning of the constitution, what is commonly called the 'county seat.' It is the place where the courthouse and the jail and the county offices are located; the place where the chancery and circuit and county courts are held, and where the county records are kept. The seat of justice is located with reference to the convenience of the citizens of the county. After it is located, the county court is required by law to erect 'a courthouse, jail, and other necessary county buildings.' Code, sec. 408."

Chapter 5 of the Private Acts of 1913 was entitled,

"An Act to establish a Circuit and Chancery Court at Tracy City, Tenn.; to regulate the proceedings thereof; to require the Judge of the Circuit Court and the Chancellor of the Chancery Court of Grundy County to hold

said courts, and the Attorney-General of the Grundy County Circuit Court to discharge the duties of his office for said Tracy City Circuit Court, and to define the jurisdiction of said courts.''

In *Stuart v. Bair,* 67 Tenn. 141, this Court held that under the Constitution of Tennessee, Article X, Section 4, the Legislature can not, by direct or indirect means, remove a county seat. It can only be done by the concurrence of two-thirds of the qualified voters of the county. The bill in that case had charged a fraudulent effort had been made to remove the county seat from Newport across a river to Clinton against the wishes of the people of the county, and that such action on the part of the Legislature and of the County Court was illegal, null and void. It further held that no legislation, direct or indirect, by the Legislature could accomplish this purpose.

The case of *Braden v. Stumph,* 84 Tenn. 581, involved an effort to remove the county seat of Hardin County from Purdy to Falcon. The Court summarized all its earlier decisions in similar cases, including the Grundy County case of *Bouldin v. Lockhart,* 69 Tenn. 195, and in connection with Acts of the Legislature attempting to move a county seat from one town to another, the Court said:

"It is suggested in the petition that the acts of 1885, authorizing the holding of the chancery and circuit courts at Falcon, are valid acts of ordinary legislation, and prevent the holding of those courts at Purdy. But these acts, treated as permanent removals of the courts from the county seat, would be simply void. For otherwise, the court might do indirectly, by ordinary legis-

lation, what they could not do directly. These acts are precisely of the character of one of the acts held to be unconstitutional and void in *Stuart v. Bair,* 8 Baxt. 141 [67 Tenn. 141.] The power of the Legislature to authorize the holding of courts temporarily at another place than the county seat, for good reason, is another question altogether.''

In the case of *Ellis v. State,* 92 Tenn. 85, 20 S.W. 500, 501, involved the constitutionality of an Act creating the law court of Rockwood, which was given jurisdiction over five of the seventeen civil districts of Roane County. In holding that the Legislature has power to create and establish special courts, this Court said:

''The counsel for the prisoner contends that this act is in violation of section 4 of article 10, of the constitution of the state. That part of said section which is claimed to be violated by the act is as follows: 'Nor shall the seat of justice of any county be removed without the concurrence of two-thirds of the qualified voters of the county.' The power of the legislature to establish special courts, under section 1 of article 6 of the constitution, is well established, and is not denied in this case. *Moore v. State,* 5 Sneed, [510] 512 [37 Tenn. 501]; *Wilcox v. State,* 3 Heisk. [110] 114 [50 Tenn. 110]. But while conceding the general power to establish special courts, the contention is that the legislature has no power to establish a special court at any other place in a county than the county seat; and that the establishment of such a court by the legislature at a place other than the county seat is to remove the seat of justice 'without the concurrence of two thirds of the qualified voters of the county.' The act

of 1891, which we are considering, does establish the law court of Rockwood at the town of Rockwood, while the county seat is at Kingston.

"The question, then, is squarely presented, whether an act of the legislature establishing a new court at a point other than the county seat is a removal of the seat of justice. If the act has this effect, either directly or indirectly, then it is plainly in violation of the constitution, and it will be our duty to declare it void, as was done in the case of *Stuart v. Bair,* 8 Baxt. 141-146 [67 Tenn. 141]."

Article X, Section 4 of the Constitution of Tennessee, provides and is in part as follows:

"* * * and, where an old county is reduced for the purpose of forming a new one, the seat of justice in said old county shall not be removed, without the concurrence of two-thirds of both branches of the Legislature, nor shall the seat of justice of any county be removed without the concurrence of two-thirds of the qualified voters of the county."

■ The removal is not authorized by the concurrence of two-thirds of all those voting, unless every qualified voter in the county votes in the election; but two-thirds of all the qualified voters of the county must actually vote for the removal in order to authorize the same. *Bouldin v. Lockhart,* 1873, 62 Tenn. 262; *Braden v. Stumph,* 1886, 84 Tenn. 581.

Title to Chapter 2 of the Public Acts of 1957, which is under attack in this cause, is as follows:

"An Act to amend Sections 16-232 and 16-248, Tennessee Code Annotated, and to repeal An Act appear-

ing as Chapter 5 of the Private Acts of 1913, the same being entitled: 'An Act to establish a Circuit and Chancery Court at Tracy City, Tenn.: to regulate the proceedings thereof; to require the Judge of the Circuit Court and the Chancellor of the Chancery Court of Grundy County to hold said courts, and the Attorney-General of the Grundy County Circuit Court to discharge the duties of his office for said Tracy City Circuit Court, and to define the jurisdiction of said courts,' and to provide for the transfer of causes pending in the Circuit and Chancery Courts at Tracy City.''

■ Chapter 2 of the Public Acts of 1957 does not conform to the requirements of the home rule amendment of 1953 to Article XI, Section 9 of the Constitution of Tennessee. It is true that this Act ignores the home rule amendment but we are of the opinion that Chapter 2 of the Public Acts of 1957 had included the home rule provisions, that such inclusion was not necessary and would have been treated as harmless surplusage.

The complainants further insist that Chapter 2 of the Public Acts of 1957 violate Article XI, Section 9 of the Constitution of Tennessee as amended, and that this Act was private or local in form or effect applicable in its governmental capacity because it was not applicable to any other county.

■ ■ We are of the opinion that Chapter 2 of the Public Acts of 1957 is not an Act ''private or local in form or effect applicable to a particular county.'' The home rule amendment to Article XI, Section 9, was not designed to give to the voters of a county affected the right to veto Acts of the Legislature with State Courts

or the salaries to be paid out of the Treasury of the State of Tennessee to the Judges and Chancellors thereof.

■ Since the Constitution gives to the General Assembly the right to establish such courts, it likewise has the right to abolish such courts whenever, in the opinion of the Legislature, the public welfare requires this to be done. The discretion of the Legislature is not subject to review by the courts and has the right to abolish the circuit court and chancery court of Tracy City.

■ Chapter 5, Private Acts of 1913 did not constitute any removal of the seat of justice from Altamont to Tracy City. If the Act had this effect, either directly or indirectly, then it would plainly be in violation of the Constitution and it would be the duty of this Court to declare this Act void, as was done by this Court in the case of *Stuart v. Bair,* 67 Tenn. 141.

An examination of the Acts of 1913 shows beyond question it was not the intention of the Legislature to create an alternative seat of justice at Tracy City, but its sole purpose was to provide for holding circuit court and chancery court at this place.

■■ We are therefore of the opinion that Chapter 2 of the Public Acts of 1957 is a valid and constitutional statute and does not have to be approved by a two-thirds vote of the County Court of Grundy County, or by a majority of the voters of said County, as such was not contemplated by Article XI, Section 9 of the Constitution.

We are of the opinion that the Chancellor correctly sustained the second and third grounds of the demurrer. The first ground of the demurrer is that the complainants are adversely affected by Chapter 2 of the Public

Acts of 1957. However, we think that the taxpayers had the right to institute this suit. However, it is not necessary to determine this point since the grounds of the demurrer sustained by the Chancellor are determinative of this cause.

It results that the assignments of error are overruled and the decree of the Chancellor is affirmed.