**Roy LAWSON et al., Appellants,**

v.

**John RAY et al., Appellees.**

Supreme Court of Tennessee.

April 11, 1977.

**374**

Michael E. Vaughn, Robert C. LeQuire, Garrett, Shields, LeQuire & Glandon, Manchester, for appellants.

Harry B. Gilley, County Atty., Manchester, James H. Henry, Henry & McCord, Tullahoma, for appellees.

## OPINION

WM. M. LEECH, Special Justice.

This cause comes to this Court by direct appeal from a decree of the Chancery Court for Coffee County, Tennessee, wherein defendants' Motion for Summary Judgment was sustained and the case dismissed. We affirm.

In this opinion the parties will be referred to as they appeared in the Court below; that is Appellants, Roy Lawson, et al. Citizens and Taxpayers of Coffee County, as plaintiffs, and Appellees, the County Judge, the County Trustee and the members of the Quarterly County Court of Coffee County, as defendants.

The Chancellor in sustaining defendants' Motion for Summary Judgment in a memorandum opinion correctly set out the purpose of the suit and the issue involved as follows:

"This is an action brought by the Citizens of Coffee County, Tennessee against a number of the elected officials of Coffee County, Tennessee, including the County Judge and members of the Quarterly County Court. The action seeks to enjoin the County officials from building a new courthouse in Manchester, the County Seat. The suit alleges that the construction of such building would be in violation of the Constitution and Section 5–401 of the Tennessee Code Annotated which requires two-thirds of the qualified voters of the County to remove the 'Seat of Justice'.

It is stipulated that the present courthouse is located on a 40 acre tract that was set aside as a Seat of Justice pursuant to the act of the legislature.

It is further stipulated that the location for the proposed new courthouse is approximately three blocks from the present one, within the corporate limits of the City of Manchester as now constituted and has been constituted for many years.

The plaintiffs ask that the officials be enjoined from constructing the new courthouse as they claim it would be a relocation of the Seat of Justice and in violation of the law since two-thirds or more of the qualified voters of Coffee County Tennessee have not affirmatively voted to make such change.

The defendants ask that the petition be dismissed on the basis that the defendants have acted lawfully, and the plaintiffs are not entitled to the relief sought. They further claim that there is no material dispute of facts and, therefore, request a Summary Judgment for the defendants.

This Court has the jurisdiction over this case. *[Lindsay] v. Allen,* 112 Tenn. 637, [82 S.W. 171] *Stuart v. Bair,* 67 Tenn. 141.

The Private Acts pertaining to the historical development of the town of Manchester as they apply to this case are as follows:

'1. Chapter 47, Private Acts of 1835–36, Section 6.

"Be it enacted, That the town of Manchester, the seat of justice in Coffee County, shall be laid off by the commissioners appointed for that purpose between the two forks of Duck River, above the Stone Fort, on both sides of

the main road from Nashville to Winchester, and upon the hundred acres of land obtained from Andrew Hynes for that purpose.

EPHRAIM H. FOSTER,
Speaker of the House of Representatives.
JONATHAN WEBSTER,
Speaker of the Senate.
Passed February 9, 1836."

2. Chapter 30, Private Acts of 1837–38.

"An Act to locate permanently the seat of justice in Coffee County.

Section 1. Be it enacted by the General Assembly of the State of Tennessee, That the sixth section of an act, passed the ninth day of February, 1836, entitled 'an act' supplemental to an act to establish the county of Cannon, be and the same is hereby repealed; and that the town of Manchester, as laid off by the commissioners, on the south side of the two forks of Duck River, in said county, shall continue to be the seat of justice for said county of Coffee.

JOHN COCKE,
Speaker of the House of Representatives.
TERRY H. CAHAL,
Speaker of the Senate.
Passed October 21st, 1837."

3. Chapter 278, Private Acts of 1837–38.

"An Act to incorporate the citizens in the town of Manchester, in the County of Coffee.

Section 1. Be it enacted by the General Assembly of the State of Tennessee, That the citizens of the town of Manchester, in the county of Coffee, be and they are hereby incorporated under the name and style of the mayor and aldermen of the town of Manchester, with the same powers, rights and privileges in all respects as are conferred upon the mayor and aldermen of the town of Lewisburg, in Marshall county, by an act passed at the present session of the General Assembly.

Section 2. Be it enacted, That the sheriff of Coffee County shall, after giving ten days notice at three public places in the town of Manchester, open and hold an election for seven aldermen, under the same rules and regulations as are prescribed for electing aldermen in the town of Lewisburg, and ever afterwards, the said sheriff shall hold said election on the first Saturday in January in each and every year.

Section 3. Be it enacted, That the mayor and aldermen shall have power to extend the corporate limits so as to include both the springs, and may so run the lines of said corporation.

JOHN COCKE,
Speaker of the House of Representatives.
TERRY H. CAHAL,
Speaker of the Senate.
Passed January 26th, 1838." '

It is obviously true that the old Seat of Justice shall continue as originally located until there is an actual removal to another place by the required vote; however, it is necessary for the Court to define Seat of Justice and analyze the intent of the Constitutional provision. The issue as stated in the defendants brief is reiterated as it concisely pinpoints the issue.

'Is the "Seat of Justice" of Coffee County permanently limited to the 200 acres of land as originally fixed and described by the Private Acts of 1837 so as to require a two-thirds vote of the people to move the courthouse to another location within the boundaries or limits of the town of Manchester as now constituted?' "

The pertinent portion of Article 10, Section 4 of the Constitution of Tennessee applicable to the issue in this case reads:

". . . nor shall the *Seat of Justice* of any County be removed without the concurrence of two-thirds of the qualified voters of the County. But the foregoing provision requiring two-thirds majority of the voters of a County to remove its *County seat* shall not apply to the Coun-

ties of Obion and Cocke." (Emphasis added.)

◼ It is clear from the above language of the Constitution that "Seat of Justice" and "County Seat" are synonymous terms. Can it be said that the framers of the Constitution intended that once a county seat town had been established then the courthouse and all county buildings provided by the county for county offices[1] shall be erected within the *original limits* of the county town? We think not.

Both plaintiffs and defendants cite the 1874 case of *Stuart v. Bair*, 67 Tenn. 141. In that case there was an attempt to move the county seat from Newport to Clifton, two separate and distinct towns in Cocke County. The original bill in that case set out and alleged in detail a series of events constituting a fraudulent design to move the county government of Cocke County from one rural town to another rural town, and this scheme to do indirectly what could not be accomplished directly culminated by fraudulently procuring the passage of a private act in the General Assembly extending the corporate limits of the county seat town so as to include the other town. The case does recognize that "Seat of Justice" and "County Seat" are synonymous terms.

We think it advisable to call attention to the method by which communities were incorporated and corporate boundaries extended in 1874, more than one hundred years ago. Tennessee then was primarily rural, and the county seat towns were in the main small. Communities were incorporated by Private Acts of the Legislature, and the wishes of the local legislator in the

passage of private acts affecting his county were seldom questioned. In 1836 when Manchester was designated as the county seat town for Coffee County, all county offices could easily be contained in one building. Since then many additional departments of county government have been established. Because of changes in local government, increased population, changing from primarily an agricultural to a rapidly expanding industrial state, Tennessee has seen the necessity to change the procedure for incorporating unincorporated towns and communities and annexing additional territory. Thus, the subterfuge attempted in *Stuart v. Bair, supra*, could not today be employed.[2]

If there were allegations and proof that the boundaries of Manchester had been extended as a subterfuge to defeat the provisions of the Constitution of Tennessee and remove the county seat of Coffee County from Manchester to another town in the county, we would not hesitate to grant plaintiffs the relief which they seek.

The stipulation in the record discloses that the area of the proposed new site has been within the corporate limits of Manchester for many years, and from the affirmative averment in defendants' answer, which was not denied, since March 17, 1905.

◼ The framers of the Constitution of 1870 wisely did not specifically prohibit the relocation of the county courthouse within the limits of the county seat town as expanded. The action of local legislative bodies when acting in good faith for the efficient administration of local government, if

---

1. Section 5–705, Tennessee Code Annotated reads as follows: "The courthouse and all county buildings provided by the county for the county offices shall be erected within the limits of the county town; provided, however, the jail may be located outside the limits of the county town but within the boundaries of the county."

2. Title 6, Tennessee Code Annotated, Chapter 1, Section 6–101 et seq. provides for incorporating an unincorporated territory of a county and provides for the issuance of a charter upon a vote of a majority of the residents of the territory affected. Section 6–101 provides in part: "No territory, any part of the boundaries

of which would be within two (2) miles of any part of the boundaries of an existing incorporated city or town, and which territory has less than five hundred (500) residents as determined by a census taken by or under the direction of the Tennessee state planning commission, may be incorporated as a city or town under any general law or by private act."

Chapter 3 of Title 6, Tennessee Code Annotated, "Change of Municipal Boundaries" requires the adoption of a plan of services to be approved by a planning commission and subject to court review.

not specifically prohibited by the Constitution or general statutes, should not be disturbed by the Courts.

Plaintiffs cite several cases from foreign jurisdictions in support of their construction of our Constitution, and they rely mainly upon two Alabama cases, *Marengo County v. Matkin*, 134 Ala. 275, 32 So. 669 (1902) and *Rogers v. Wells*, 216 Ala. 514, 113 So. 524 (1927). The Alabama Constitution is more restrictive in its terms than is the Tennessee Constitution, and even if that were not the case, we would not be inclined to place such limitations upon the authority of our local governments to keep abreast with twentieth century progress.

Defendants have cited two recent cases from states with constitutional provisions virtually identical to that portion of the Tennessee Constitution here being considered: *Morris v. Scott*, 258 S.C. 435, 189 S.E.2d 28 (1972), and *Ventura Realty Co. v. Robinson*, 10 Cal.App.3d 628, 89 Cal.Rptr. 117 (1970). These cases support defendants' interpretation.

Section 5–711, Tennessee Code Annotated, specifically provides for disposition of inadequate county buildings and the construction of new facilities at a new location in the county seat town.[3] From the undisputed facts disclosed by the record the Coffee County Court has complied with this statutory provision.

We adopt the reasoning applied by the California Court of Appeals in *Ventura Realty Co.* and construe the provision of Article 10, Section 4 of the Tennessee Constitution that the "removal" therein contemplated applies to a transfer of the seat of county government from the established county seat town to some other city or town in the county and not a change of the site of the courthouse from one part of the county seat town to another part of the same town.

The decree of the Chancery Court for Coffee County is affirmed. The appellants will pay the costs of the cause.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.

---

**3.** "5–711. Sale and replacement of courthouse or jail.—Whenever, in the opinion of a majority of the justices of the county court, two-thirds (⅔) of them being present, the site of a jail or public prison, or courthouse, is unhealthy, insecure, or inconvenient in its location to the county or to the town, or inhabitants of the town, in which it is situated, or the interest and convenience of said town would be promoted by the removal of any of the same, said justices may order a sale of the site, and of the whole or part of the materials used in its construction; and they may also order that a more eligible, convenient, healthy, or secure site be purchased, and cause to be erected thereon a new jail or courthouse, better suited to the convenience of said town, and to secure the safe custody, health, and comfort of prisoners."